**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF WISCONSIN**

---

**Jeremy Wicke**
**John Perry**

**On Behalf of Themselves and All**
**Others Sharing a Common Interest**

|  |  |
|---|---|
| **v.** | **Case No. 12-CV-638-wmc** |
| **L & C Insulation, Inc.,** | **DEMAND FOR JURY TRIAL** |

---

**PLAINTIFFS' RESPONSE TO DEFENDANT'S MOTION TO DISMISS**

---

### I.  Introduction.

Rule 8(a)(1) of the Federal Rules of Civil Procedure requires that a complaint state a claim for relief, which must contain a statement of jurisdiction, a short and plain statement of the claim showing that the pleader is entitled to relief, and a demand for the relief sought.  Rule 8(d)(1) additionally requires that each allegation of the complaint be simple, concise and direct. L & C's arguments that the complaint must describe in detail the when, where, and how much of each alleged wage violation, and that the complaint must allege the satisfaction of all requirements for a class action lawsuit, go beyond the dictates of Rule 8 and would require plaintiffs in future federal court wage and hour litigation to file treatises in lieu of complaints. Each of the plaintiff's federal law claims contained in the original complaint sufficiently alleged a claim by explaining that L & C violated the law by failing to count specific hours worked by them as hours worked; and that they suffered legally remediable injury in the form of unpaid overtime pay as a result of L & C's violations.  Out of an abundance of caution, and to assert

1

additional claims the plaintiffs are filing with this memorandum a First Amended Complaint, which further articulates that L & C's failure to count their training, travel, studying, and similar hours worked resulted in the underpayment of overtime pay required by the FLSA. Additionally, the questions of whether a class should be certified should be decided at the class certification stage, rather than on a motion to dismiss.  The Court should not dismiss the class allegations contained in the complaint, when the allegations of the complaint do not establish that it will be impossible to develop facts through discovery to support class certification.

L & C fares no better with its argument that the case is moot, as a result of a $10,000 offer of judgment that it tendered to Named Plaintiff Wicke.  The offer does not render the plaintiffs' claims against L & C moot both because L & C offered to Wicke less than the full amount of relief he is claiming in his complaint, and because it is undisputed that the plaintiffs filed a motion for class certification within the 14 days permitted to Wicke to consider L & C's offer of judgment, so that the complaint includes the claims of the class which were not addressed by the offer of judgment to Wicke.

Finally, L & C has failed to establish that the Court should exercise its discretion to decline jurisdiction over the plaintiffs' state law claims.  The Court has no discretion to decline jurisdiction when none of the requirements of 28 U.S.C. 1367(c) are met, in that the state law claims require application of state law statutes as interpreted by unambiguous state administrative regulations, and do not implicate novel or complex state law issues; and when the similarity of federal and state law claims show that state law claims do not predominate.  Even if, arguendo, the Court had discretion to decline supplemental jurisdiction, it should not do so given the strong judicial economy interest in  avoiding duplicate litigation in parallel federal and state

proceedings, and when dismissal of the plaintiffs' state law claims would bar much of their claim by application of the statute of limitations.

## II.  Argument.

A.   THE COMPLAINT AND FIRST AMENDED COMPLAINT ADEQUATELY ALLEGE CLAIMS ARISING UNDER THE FAIR LABOR STANDARDS ACT.

1.   A Complaint Need not Contain Every Detail of Each Alleged Violation.

Following the Supreme Court's clarification of the pleading standard in decisions such as *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcraft v. Iqbal*, 129 S. Ct. 1939 (2009), the Seventh Circuit continues to recognize that a claim is stated when required elements are pled; and that not every single fact in every violation needs to be pled.  *Independent Trust Corp. v. Stewart Info. Servs. Corp.*, 665 F. 3d 930, 935 (7th Cir. 2012) (Complaint only needs to plead enough facts to allow the court to draw the reasonable conclusion that the defendant is liable for the alleged misconduct; and that the plaintiff has a right to relief above the speculative level); *Swanson v. Citibank N.A.*, 614 F. 3d 400, 406 (7th Cir. 2010) (*Twombly* has not reinstated old form pleading, does not require pleading specific facts, and does not change the pleading standard in many straight forward cases).  As *Twombly* itself held, to meet federal pleading standards a complaint need not contain detailed factual allegations.  *Twombly*, 550 U.S. at 555. *See also Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (Complaint only needs to give the defendant fair notice of what the claim is and the ground upon which it rests).

The amount of facts that need to be pled to survive a motion to dismiss depends on the type and complexity of the claim.  *Swanson*, 614 F. 3d at 404-405.  A claim arising under the Fair Labor Standards Act is a fairly straight forward claim, because it does not require proof of

intent.  *Secretary of Labor v. Labbe*, 319 Fed Appx. 761 *4-5 (11th Cir. 2008)(Unpublished); *Martinez v. Regency Janitorial Services*, 2011 U.S. Dist. Lexis 105980 *9 (E.D. WI. 2011).  A complaint for a violation of the FLSA therefore need not contain facts showing the existence of an agreement to conspire to violate the antitrust laws that were not adequately pled in *Twombly*, discriminatory intent to implement a detention program that was not sufficiently pled in *Iqbal*, or the intent to discriminate against black brokers that was not adequately pled in *McReynolds v. Merrill Lynch*, 694 F. 3d 873 (7th Cir. 2012).

Rather, a claim under the FLSA only needs to plead facts alleging that the plaintiffs worked more than 40 hours during work weeks, and were not paid for the overtime hours.  The complaint need not contain additional details such as what work was performed during overtime hours, when and where the work was performed, or when and why overtime pay was denied. *Martinez*, 2011 Dist. Lexis 105980 *9-10.  Similarly, in *Sanchez v. Hatz Constr. Inc*., 2012 U.S. Dist. Lexis 537 *9-10 (S.D. IL, 2012), the court held a complaint that alleged that the plaintiffs frequently worked more than 40 hours per week without overtime pay sufficiently raised a claim, even though the complaint did not contain details such as the type of work performed, days and hours worked, or the amount of money owed to the plaintiffs.  *See also Espenscheid v. Directsat USA*, 708 F. Supp. 2d 781, 794 (W.D. WI. 2010) (wage complaint sufficient if allege existence of employment relationship, that the employees completed work indispensable to their employment, that the employees were not compensated for their work, and were subject to the handbook[1]).

---

[1] In *Espenscheid*, the complaint alleged that the employees were required by the handbook to perform work, for such they sought compensation in the lawsuit. Any handbook that L & C may have issued to the

4

L & C's argument that the complaint needed to allege when the unpaid work was performed especially misses the mark.  Since the timeliness of a complaint is an affirmative defense, and a complaint need not plead facts to anticipate defenses, a complaint need not contain any facts showing that its claims are timely.  *Tregenza v. Great Am. Comm. Co.*, 12 F. 3d 717, 718 (7th Cir. 1993); *Hofts v. Howumedia Osteonics Corp.*, 597 F. Supp. 2d 830, 841 (S.D. IN. 2009) (Complaint need not allege when defect in product was discovered); *S.C. Johnson & Son v. Buske*, 2009 U.S. Dist. Lexis 85022 *37 (S.D. IL. 2009) (Whether claims are time barred should not be resolved at the motion to dismiss stage, unless the plaintiff pleads facts showing that his claims are time barred).  Similarly, the plaintiffs' complaint is not required to contain any factual allegations showing when L & C's violations of the FLSA occurred.

*Twombly* and *Iqbal*, when applied to FLSA claims, therefore only requires sufficient factual allegations showing that work was performed that the employer should have, but failed to count as work time; and that the failure to count the time as work time resulted in an underpayment of overtime pay to the plaintiffs.  The Klinghoffer rule cited by L & C is not relevant to the case at bar, whose FLSA claims solely concern L & C's failure to pay overtime wages, rather than its failure to pay the minimum wage.

On the issue of whether there was an underpayment of overtime pay, the plaintiffs' original complaint pled sufficient facts to survive a motion to dismiss: The Complaint's training time pay claim specifically alleged that L & C did not pay to the plaintiffs all overtime pay they were entitled to receive, had their training time been counted as hours worked.  (Id. ¶12,) The travel pay and study time pay claims similarly alleged that L & C failed to count the travel time

---

plaintiffs is not alleged to have a similar role in the case at bar, so that the existence of and contents of the handbook need not be pled in the complaint.

and study time as hours worked, for the purpose of calculating the plaintiffs' entitlement to overtime pay.  (Id. ¶29, 37) The Complaint alleged that plaintiffs received one hour of pay at their shop rate, rather than time and a half their regular rate for their unreported overtime hours worked  (Complaint, ¶43)  The Complaint also alleged the plaintiffs did not receive overtime pay for overtime hours worked and  acknowledged on their paychecks(Id. ¶ 51).

While the original complaint articulates FLSA overtime claims in counts I, III, V, VII s, out of an abundance of caution, and as authorized by Rule 15(1)(B), the plaintiffs have submitted to the Court a First Amended Complaint.  In addition to adding additional claims (specifically travel pay and shop work pay when the plaintiffs were required to travel to, and perform work in a company warehouse), the First Amended Complaint also more clearly articulates that the Defendant failure to count travel time and study time as time worked  as required by the FLSA resulted in a failure to pay time and one half for all hours worked over 40 hours in a week.

L & C's motion to dismiss does not allege that the complaint failed to adequately plead damages for Wisconsin law claims.  Wis. Stat. §109.03(5) is a full wage payment statute, rather than a minimum wage statute.  Therefore, the employee is entitled to additional wages under Wisconsin law for each unpaid hour, regardless of whether he worked overtime during the week. *See for example Spoerle v. Kraft Foods Global*, 614 F. 3d 427 (7th Cir. 2010) (Employee entitled to additional pay for donning and doffing time under Wisconsin law, regardless of whether overtime hours were worked).

    2.    The First Amended Complaint Adequately Pled Claims for Training and Study
          Time Overtime Pay.

Federal regulations interpreting the FLSA make clear that all training time that the employee is required by his employer to attend must be paid.  29 C.F.R. §785.27 (Training time

need not be paid if all four requirements are met, one of which being attendance at the training must be voluntary rather than mandatory).  29 C.F.R. §785.28 further clarifies that attendance is not voluntary, if the employee is given to understand that his working conditions would be adversely affected by non-attendance.  ¶10 and 11 of the Complain and now the First Amended Complaint alleges that even though the training was not a pre-hiring requirement, and the plaintiffs were not bona fide apprentices, their eligibility for a wage increase was contingent upon adequate attendance at unpaid training.  By alleging that the plaintiffs' wages, a working condition,  are  adversely affected by their non-attendance at unpaid training, the complaint and amended complaint adequately allege that the training was mandatory, and therefore must be paid pursuant to §785.27. Paragraph 12 of the First Amended Complaint further alleges that had the plaintiffs' time attending mandatory but unpaid training been counted as hours worked, they were entitled to more overtime pay under the FLSA for working more than 40 hours during the week, than they actually received from L & C.  The First Amended Complaint therefore adequately pled a FLSA training pay claim for unpaid overtime pay.

Similarly, under federal law all required study time is compensable.  *Maynor v. Dow Chem. Co.*, 671 F. Supp. 2d 902, 922 (S.D. TX. 2010) (Study time compensable when employees faced potential discipline if their test performance was inadequate, and they did not record sufficient off-duty studying time). In the case at bar, the Complaint and now the First Amended Complaint alleges that (1) the plaintiffs were required by L & C to study for in-class tests, or to take take-home tests; (2) that the plaintiffs did not have time during paid study or work time to study for the in class tests or to take the take-home tests; (3) the plaintiffs could not pass the tests without studying, and (4) employees were ineligible for a wage increase unless they adequately

performed on the in-class and take-home tests.  (First Amended Complaint, ¶33-36)  The First Amended Complaint therefore adequately alleges that the plaintiffs were required by L & C to use their off-duty time to study, so that the study time was compensable.  The First Amended Complaint further alleges that had L & C counted the plaintiffs' study time as hours worked, they were entitled to more overtime pay under the FLSA for working more than 40 hours during the week, than they received from L & C.  (¶39)  The complaint therefore adequately alleged an overtime violation, as a result of L & C's failure to treat the plaintiffs' required study time as hours worked.

        3.    <u>The First Amended Complaint Adequately Pled Claims for Travel Pay</u>.

The plaintiffs state three separate FLSA claims for travel pay under the First Amended Complaint:  When their employer-required travel resulted in an overnight stay away from home, when they traveled between work locations, and when they were required by the employer to report to the shop and perform work at the shop. The first two allegations were pled in the original complaint, while the third was added by the amended complaint. The complaint adequately pled claims for all three types of travel pay, none of which is barred by the Portal to Portal Act.  The *Novesky* and *Espencheid* cases cited by L & C involved routine travel between home and work not compensable under the Portal to Portal Act, and are not applicable to the special travel situations in the complaint.  *Novesky* indeed denied the employer's motion for summary judgment, on the ground that the work the employee performed at home prior to commencing travel between home and work may constitute principal activities, so that travel time once principal activities commenced were compensable See 2011 U.S. Dist. Lexis 110999 *9.

Even though the Portal to Portal Act as a general matter does not require the employer to pay the employee for travel between home and work, pursuant to 29 C.F.R. §785.39 the driver is entitled to pay for all travel time when the trip involved an overnight stay away from home, while the passenger is entitled to pay for all travel time during his normal work hours on a trip involving an overnight stay away from home.  Courts have emphatically rejected the argument that §785.39 violated the Portal to Portal Act.  *See for example Tredway v. BGS Constr. Inc.*, 2007 U.S. Dist. Lexis 71149 *11 (S.D. W.V. 2007).   The case of *Dekker v. Construction Specialities of Zeeland*, 2012 U.S. Dist. Lexis 29336 (W.D. MI. 2012) cited by L & C support the same conclusion by applying §785.39 to hold that the employer was not entitled to summary judgment on the employees' overnight travel pay claim, because there was a dispute of fact over whether the employees traveled (the court did not discuss whether the employees were driving or riding) during their regular work hours.  *See supra*  *12.  Indeed, given that 29 U.S.C. §254(2) states that travel using the employer's vehicle outside the employer's normal commuting area is considered a principal activity, the Portal to Portal Act  is consistent with the Department of Labor regulations classifying trips far enough from home to require an overnight stay as compensable principal activities.

The First Amended Complaint adequately alleges a claim for unpaid overnight travel pay, by alleging that the plaintiffs were required by L & C to have overnight stays on trips to La Crosse, Wisconsin for training  and to work sites; that the plaintiffs were not paid for their first two hours of travel each way on overnight trips, and that counting the plaintiffs' travel time on overnight trips as hours worked would have resulted in them becoming eligible for more overtime pay for working more than 40 hours per week than they actually received,.  (First

Amended Complaint, ¶18-20, 24).  In *Espechscheid*, 708 F. Supp. 2d at 794, the Western District of Wisconsin held that an allegation the employer did not allow its employees to take their meal breaks was adequately detailed.  Similarly, the allegation that the employees were not paid for their first two hours of travel time each way is a sufficient allegation of fact, without the need to further explain when and for how long the plaintiffs traveled on their overnight stay trips.

The plaintiffs' claim for travel pay when they were required by L & C to drive from their last jobsite on the day to the training site in La Crosse, Wisconsin similarly does not run afoul of the Portal to Portal Act   Pursuant to 29 C.F.R. §785.38, an employee's travel time in between performing principle activities must be paid.  §785.38 has been cited with approval by the United States Supreme Court.  *See IBP Inc. v. Alvarez*, 546 U.S. 21, 35 (2005).  Similarly, when the plaintiffs were required by L & C to travel from their last jobsite for the day to La Crosse, Wisconsin, so that they could attend mandatory training on the same day, the mandatory training was the employees' last principal activity on the day. (First Amended Complaint, ¶21). The employees' travel time to the last principal activity, the training in La Crosse, is therefore compensable.  *Sandifer v. U.S. Steel Corp*., 678 F. 3d 590, 595-596 (7th Cir. 2012) (Whether travel time after putting on protective equipment and before commencing work is compensable depends on whether putting on protective equipment is a compensable activity).  The First Amended Complaint further alleges that counting the travel time as hours worked increase the hours of work over 40 per week for which plaintiffs' are entitled to overtime pay under the FLSA (Id. ¶24) The Complaint and first Amended Complaint adequately state a FLSA claim against L & C.

10

With respect to the times when the plaintiffs were required to report to the shop; or were required to travel from their last jobsite to the shop, there is authority for the proposition that such mandatory travel is compensable, regardless of whether the employees performed work once arriving at the shop. *Guzman v. Laredo Sys.*, 2012 U.S. Dist. Lexis 150447 *12 (N.D. IL. 2012) (Travel from worksite to shop compensable, because employer required employees to report at the shop). Moreover, the work of loading and unloading trucks is directly related to the employees' principle construction activities, and therefore constitute principal activities. *Dunlop v. City Electric*, 527 F. 3d 394, 401 (5th Cir. 1976); *O'Brien v. Encotech*, 2004 U.S. Dist. Lexis 4696 *17 (N.D. IL. 2004). The First Amended Complaint, by alleging that the plaintiffs (1) were required to report to the shop in the morning, as well as to travel from their last jobsite for the day to the shop; (2) were required to perform work in the shop such as loading and unloading trucks; and (3) are entitled to additional overtime pay pursuant to the FLSA  because their travel time between the shop and the jobsite, as well as their work time in the shop should have  been counted by L & C as hours worked, adequately pleads a claim for additional overtime compensation under the FLSA. (First Amended Complaint, ¶22-24).

4.    The Plaintiffs' Other Federal Law Claims Are Pled With Sufficient Specificity.

Aside from generally complaining that the complaint did not specifically allege when, where, what, and how much unpaid work was performed, L & C do not specifically argue that any other count of the plaintiffs' federal law claims failed to state a claim. Each of the remaining counts is adequately detailed to survive a motion to dismiss.

On the claim for the under-reporting of overtime hours, the First Amended Complaint alleges that (1) L & C's supervisors instructed their employees to record fewer overtime hours on

11

their time cards, than they actually worked; (2) the un-recorded overtime hours were paid to the plaintiffs at the rate of one hour of time per each hour of un-recorded overtime; (3) unrecorded overtime was always paid at the employees' shop rate, which was equal to or lower than the rate the employees were supposed to receive; and (4) as a result the employees did not receive all FLSA overtime pay they were entitled to. (First Amended Complaint, ¶¶44-47) 29 U.S.C. §207(a) requires the employer to pay its employees, at one and one half times the regular rate, for each hour worked in excess of forty hours per week. The First Amended Complaint thus adequately alleged that L & C failed to pay employees 1.5 times the regular rate for their un-recorded overtime hours worked, and thereby violated §207(a).

The First Amended Complaint further alleges that there were weeks when the paychecks issued by L & C acknowledged the plaintiffs worked more than 40 hours during the week, but did not include overtime pay for all acknowledged overtime hours worked. (First Amended Complaint, ¶54) Since the paychecks issued by L & C likely did not record more hours worked than the employees actually worked for the week, a claim that L & C failed to pay overtime pay for all overtime hours recorded on employee paychecks states a claim for relief under §207(a). (First Amended Complaint, ¶53)

> 4.    The Complaint and First Amemded Adequately State a Claim for Travel Pay Under Wisconsin Law.

One of the Plaintiffs' Wisconsin law claims is that L & C failed to pay them for their first two hours of travel time each way, when they traveled away from their home communities. DWD §272.12(2)(g)6. The First Amended Complaint alleges that the plaintiffs were not paid for their first two hours of travel time when they traveled to training and jobsites; thus the Complaint and First Amended Complaint allege plaintiffs were sometimes required by L & C to travel for

more than two hours each way away from their home community.  (First Amended Complaint, ¶19-20)  While the First Amended Complaint does not specifically allege what are the plaintiffs' home communities, two hours of travel takes an employee away from their home community regardless of its location. For example two hours from Wisconsin's largest home community, Milwaukee, would take an employee to locations such as Green Bay, Appleton, and Wisconsin Dells.   The term "home community" refers to the immediate municipality or similar governmental unit in which one resides; and is incompatible with the construction that the entire southeastern and south central portion of Wisconsin constitutes a single home community. *State v. Olson*, 106 Wis. 2d 572, 574 (1982) (Referring to home community of Stoughton, WI.); *Chalvin v. WDHFS*, 2008 WI App. 127 ¶4; 313 Wis. 2d 749 (Ct. App. 2008) (Discussing keeping the elderly in their home communities, rather than receiving care at a hospital or nursing home). The First Amended Complaint, by alleging that the plaintiffs traveled more than two hours from their home base for work and training, adequately alleged that the plaintiffs travelled away from their respective home communities, so that all of their travel time must be paid under Wisconsin law.

        B.      A PLAINTIFF NEED NOT SPECIFICALLY PLEAD CLASS ALLEGATIONS.

        1.      <u>A Motion to Dismiss Class Allegations is Premature</u>.

Pursuant to Rule 23(c)(1), at an early practical time after a person sues or is sued as a class representative, the Court must determine whether to certify the action as a class action. However, it may be an abuse of discretion for the Court to rule upon a motion for class certification, before there is time for necessary discovery on whether the proposed class satisfies the applicable Rule 23(a) and (b) requirements for class certification.  *Damasco v. Clearwire*

*Corp.*, 662 F. 3d 891, 896 (7th Cir. 2011).  Therefore, in a case with the need for discovery on class allegations, the class certification issue should be decided after the discovery has taken place.  L & C has put the cart before the horse by asking the Court to decide the class certification issue on a motion to dismiss, before the parties have conducted any discovery on whether class certification would be appropriate.

Courts in the Seventh Circuit therefore have consistently held that a motion to dismiss class allegations is inappropriate.  *Haymer v. Countryside Bank*, 2011 U.S. Dist. Lexis 76910 *22 (N.D. IL. 2011) (Motion to dismiss class allegations for failing to meet numerosity and typicality requirements are premature, when some discovery may be appropriate to aid the class certification decision); *Johnson v. Allstate Ins. Co.*, 2009 U.S. Dist. Lexis 90595 *22 (S.D. IL. 2009) (Court should withhold judgment on motion to strike class allegations until the class certification hearing); *Walker v. County of Cook*, 2006 U.S. Dist. Lexis 52532 * 6-7 (N.D. IL. 2006) (Court should not consider whether commonality and typicality have been met on a motion to dismiss, when no motion for class certification was pending); *Parker v. Thiem Corp.*, 1983 U.S. Dist. Lexis 13913 * 2 (E.D. WI. 1983) (Court should not make significant decision on whether to certify class when only documents before it are the complaint and the motion to dismiss, but should instead schedule discovery on the class certification issue).

In support of its claim that the complaint must plead in detail the satisfaction of class action requirements, L & C solely cites to *Sjoblom v. Charter Communications, LLC*, 2007 U.S. Dist. Lexis 93879 (W.D. WI. 2007).  However, in that case the court held that the motion to dismiss class allegations should be denied unless, when the facts of the complaint are construed as true, the defendant can nonetheless demonstrate that class certification is impossible.  *See*

14

2007 U.S. Dist. Lexis 93879 *19-20.  The Court then went on to consider solely the defendant's legal arguments that pursuant to the pleadings class certification was impossible.  *Sjoblom* thus is consistent with other district court decisions in the Seventh Circuit holding that a motion to dismiss class allegations should not be entertained, unless the complaint identifies defects to the proposed class that no amount of discovery can repair.  *Plaisance v. Bayer Corp.*, 2011 U.S. Dist. Lexis 47795 *10 (S.D. IL. 2011) (Court may rule on a motion to dismiss, only when no amount of discovery can cure the identified deficiencies in the proposed class); *Wright v. Family Dollar Inc.*, 2010 U.S. Dist. Lexis 126643 *3-4 (N.D. IL. 2010) (While challenges to the class can be presented on a motion to dismiss when the defendant presents a legal argument based on the pleadings, striking class allegations is inappropriate when the dispute is factual, and further discovery is required).

Indeed, the actual complaint in *Sjoblom* contained bare assertions that the claims of the named plaintiff was typical of the class, and that the named plaintiff could adequately represent the class, without pleading any facts to support either conclusion.  (Ex. 1, ¶15, 16)  The court held that these allegations were adequate to survive a motion to dismiss, thus making clear the detailed pleading requirements set forth in *Twombly* and *Iqbal* should not apply to class action allegations in the complaint.  L & C's motion to dismiss the plaintiffs' class allegations similarly should be denied when the complaint does not show incurable defects to the proposed class.

    2.    <u>Defendant Has Not Established That</u> <u>It Is Impossible for the Proposed Class to</u> <u>Meet the So-Called "ThresholdRequirements."</u>

L & C argues that a class action complaint must plead facts demonstrating that the proposed named plaintiff is a member of the classes that he seeks to represent, but does not cite to a single case holding that the requirement can be imposed at the pleading stage through a

15

motion to dismiss.  In any event, the Complaint and First Amended Complaint adequately pled that the named plaintiffs, just like the remaining members of the class, were not paid when they traveled more than two hours away from home, and therefore were away from their home communities for work, were not paid at time and a half their regular rate when they did not report overtime hours worked pursuant to directions they received from L & C supervisors, were not paid for their acknowledged overtime hours worked, and had their overtime pay calculated using the lower rate for the specific work they performed, rather than the higher average wage they earned for the week. (First Amended Complaint, ¶20, 26-27, 44-47, 49, 53, 57-58)

L & C fares no better with its allegation that the complaint must include a proposed definition of the class.  The sole case cited in the section, *Bzdawka*, tested the adequacy of the class at the class certification stage rather than the motion to dismiss stage.  238 F.R.D 469.  The absence of a class definition from the complaint clearly does not demonstrate that a class cannot be certified.  In any event, the complaint adequately defines the class to include employees who were not paid for their first two hours of travel time each way when travelling away from their home communities for required work, who would have received additional overtime pay but for L & C's application of the policy of paying the employees at the straight time shop rate per hour of un-reported overtime worked, who were not paid for all overtime hours acknowledged on their paychecks, and who had overtime pay calculated at a rate lower than the average wage rate that they earned for the workweek.  (First Amended Complaint, ¶27, 51, 56, 62)

   3. <u>Plaintiff's Class Allegations Sufficiently Meet the Requirements of Rule 23(a) for the Purpose of the Motion to Dismiss.</u>

Rule 23(a) contains four requirements for class certification generally described as numerosity, commonality, typicality, and adequacy of class representative.  L & C incorrectly

argues in its motion to dismiss that the complaint must contain detailed factual allegations demonstrating that each element is met.  Applying the correct standard, L & C's motion to dismiss should be denied, when the pleadings do not affirmatively demonstrate that meeting any of the four requirements will be impossible following discovery.

With respect to numerosity required by Rule 26(a)(1), L & C fails to cite to a single case holding that a complaint's failure to allege satisfaction with the numerosity requirement warrants dismissal of the class allegations.  The argument that the proposed class is not sufficiently numerous should be considered at the class certification stage, rather than the motion to dismiss stage of litigation.  *Haymer*, 2011 U.S. Dist. Lexis 76910; *Holtzman v. Caplice*, 2008 U.S. Dist Lexis 41188 *6 (N.D. IL. 2008).  *See also Hodgson v. Jefferson*, 447 F. Supp. 804, 810 (D. Md. 1978), *cited by Morris v. Risk Mgmt. Alternatives*, 203 FRD 336, 341 n. 2 (N.D. IL 2001) (In response to motion to dismiss, ruling on numerosity should be reserved).  The First Amended Complaint alleges that L & C has employed at least 50 insulators over the past two years, and that the denial of overtime pay to the insulators was pursuant to company-wide policies and practices.  (First Amended Complaint, ¶6, 26-27, 49, 57-58)  Generally, a class of 40 is sufficiently numerous to make the joinder of all class members impracticable.  *Swanson v. American Consumer Industries*, 415 F. 2d 1326, 1333 n. 9 (7th Cir. 1968).  Since the complaint does not establish that numerosity cannot be met, the motion to dismiss should be denied.

With respect to commonality required by Rule 26(a)(2), L & C argues that commonality is not met, because determining liability will require consideration of the location of the plaintiffs' homes and jobsites.  However, commonality is met when the claims of the class depend upon a common contention, which is capable of class resolution.  *Wal-Mart Stores v.*

17

*Dukes*, 131 S. Ct. 2541, 2551 (2011).   Ccommonality is satisfied when the same unlawful employer policy is applied to multiple worksites.  *Bolden v. Walsh Constr. Co*., 688 F. 3d 893, 897 (7th Cir. 2012); *George v. National Water Main Cleaning Co*., 2012 U.S. Dist. Lexis 138575 *19 (D. Mass. 2012) (Commonality satisfied even though damages owed to members of the class would be different); *Rosales v. El Rancho Farms*, 2012 U.S. Dist. Lexis 123033 *16-17 (E.D. Cal. 2012).  Similarly, on the issue of travel time the plaintiffs' common contention is that anytime they travelled more than two hours from their Wisconsin homes (See First Amended Complaint, ¶6) or had an overnight stay away from home, they were travelling away from their home communities, so that all of their travel time must be paid.  Resolving the contention in the plaintiffs' favor would result in a class-wide determination that L & C violated Wisconsin law, when it failed to pay the plaintiffs' first two hours of travel time each way, and when it failed to pay the plaintiffs when they travelled less than two hours from home each way, but had a stay away from home.  (First Amended Complaint, ¶20). The issue of where the plaintiffs' home bases were, and to where they travelled   is relevant to the damage calculation only. Commonality is satisfied even when individualized determination of damages is necessary. *George v. Kraft Foods Global*, 251 F.R.D. 238, 247 (N.D. IL. 2008).

The Plaintiffs' un-reported overtime claim is similarly appropriate for class treatment, when the violations resulted from the supervisors enforcing a uniform and unlawful L & C policy.  In *Dukes*, the decision making by each supervisor required individualized determination, when proof of discriminatory intent on the part of the supervisors was essential to proving the claim.  *See* 131 S. Ct. at 2554-2555.  In *Ross v. RBS Citizens N.A.,* 667 F. 3d 900, 908-909 (7th Cir. 2012), the Seventh Circuit recognized that in a wage and hour case, which does not require

proof of wrongful intent, commonality is satisfied when the plaintiffs suffered a common injury resulting from a common policy maintained by various supervisors.  The *Vang* **v.** Kohler, 2012 U.S. App. Lexis 18184 (7th Cir. 2012) case cited by L & C supports the same conclusion, in holding that commonality can be met when supervisors enforce a uniform policy. L & C mischaracterizes the holding of *Hawkins* v. Alorica, 2012 U.S. Dist. Lexis 137051 (S.D. IN. 2012) on the commonality issue; in that case the court held that commonality was met, when the plaintiffs' injury resulted from a common break policy.  See 2012 U.S. Dist. Lexis 137051 *41-42.  Similarly, the plaintiffs allege that L & C maintained a companywide policy of requiring employees to under-report their overtime hours worked, and then under-paying the employees for their un-reported overtime hours worked. (First Amended Complaint, ¶49)  The plaintiffs' Complaint and First Amended Complaint do not establish that it will be impossible for them to meet the commonality requirement on their unreported overtime pay claim.

Finally, L & C faults the complaint for failing to specifically allege that the proposed class can meet the requirements of typicality, adequate representation, and Rule 23(b).  However, as established above the standard on a motion to dismiss class allegations is whether the pleadings establish that it will be impossible for the plaintiffs to meet class certification requirements, rather than whether the complaint alleges facts that meets all of the requirements of Rule 23.   For example, typicality should be determined at the class certification stage, rather than the motion to dismiss stage.  *Haymer, supra*.  The Court should withhold ruling on these issues, until the motion for class certification is ready for adjudication.

L & C fares no better on its argument that Wicke lacks standing to represent current L & C employees on his declaratory judgment claim.  As the National Labor Relations Board held in

19

*Giant Food Markers*, 241 NLRB 727, 728 (1979), *remanded for further factual findings by* 633 F. 2d 18, 26 (6th Cir. 1980), when the employer has negotiated an area standard rate for wages and benefits, employees have a direct interest in protecting the negotiated wages and benefits by protesting against employers who failed to pay the negotiated rates. Similarly, the plaintiff in the case at bar is an employee of one of L & C's competitors for work opportunities (First Amended Complaint, ¶78),  so that he has a direct interest in ensuring that L & C is paying all wages required by law, and competing fairly with his own employer for bid work. The plaintiff is therefore an adequate representative on the declaratory judgment claim.

> **D.     THE COURT SHOULD RESERVE RULING ON WHETHER L & C'S VIOLATIONS OF THE FLSA WERE WILLFUL.**

L & C argues that the complaint must plead sufficient facts to demonstrate that its violations of the FLSA were likely willful. However, a claim by the employer that its violation of the FLSA is not willful, and therefore a shorter two year statute of limitations should apply, is itself an affirmative defense. *McLaughlin v. Somnograph*, 2005 U.S. Dist. Lexis 38562 *9 (D. Kan. 2005)  A plaintiff need not plead factual allegations in anticipation of defenses that the employer may raise. *Tregenza*, 12 F. 3d at 718; *Hofts,* 597 F. Supp. 2d at 841. Similarly, the complaint need not include specific allegations that the employer's violation of the FLSA is willful, in anticipation of the affirmative defense that the violation is not willful, and a shorter statute of limitations applied.   *See also Goodman v. Port Auth. Of N.Y. and N.J.*, 850 F. Supp. 2d 363, 381 (S.D. N.Y. 2012) (Whether employer's violation of the FLSA is willful is a highly fact intensive inquiry that should not be resolved on a motion to dismiss).

L & C's motion to dismiss the complaint allegation that its violations of the FLSA willful is immaterial when a plaintiff need not allege in the complaint that the employer's FLSA

violations were willful, before it could argue that a longer three year statute of limitations applied for the employer's FLSA violation.  L & C has indeed failed to cite to a single case holding that the plaintiff is barred from arguing that a three year statute of limitations applied, because he failed to allege in his complaint that the employer's violation of the FLSA was willful.  L & C's motion to dismiss the allegation that its violations of the FLSA were willful therefore is both moot, and should be denied.

    D.    <u>L & C'S OFFER OF JUDGMENT TO WICKE DID NOT RENDER THE CASE MOOT</u>.

    a.    <u>L & C Failed to Tender a Full Offer of Judgment to Wicke</u>.

Since a case is not rendered moot so long as the plaintiff maintained a personal stake in the litigation's outcome, a settlement offer can knock out a named plaintiff from a proposed class action only when it offers full relief.  *Damasco v. Clearwire Corp.*, 662 F. 3d 891, 895-896 (7th Cir. 2011).  The offer therefore must be for the full amount demanded by the plaintiff.  *Gates v. Towery*, 430 F. 3d 429, 431 (7th Cir. 2005).  L & C made two offers of judgment to Plaintiff Wicke:  Either for $10,000 plus attorneys fees and costs to be awarded by the Court, or for all wages owed to Wicke on his various claims against L & C as determined by the Court.  (Docket #10, Ex. 1)  The second offer is invalid under Rule 68 Fed. R. Civ. P., because an offer of judgment in a case involving monetary judgments must be for an amount certain.  *Gavoni v. Dubbs Houses*, 1997 U.S. Dist. Lexis 15986 *7 (N.D. IL. 1997).  L & C therefore failed to tender a full offer of judgment to Wicke, unless the full amount of relief demanded by Wicke's claims equals, or is less than $10,000.

As L & C concedes, its mootness argument is an challenge to the Court's subject matter jurisdiction pursuant to Rule 12(b)(1), Federal Rules of Civil Procedure.  In determining a

challenge under Rule 12(b)(1), the Court may look beyond the pleadings, and at other evidence submitted by the parties. *Evers v. Astrue*, 536 F. 3d 651, 656 (7th Cir. 2008). The Court therefore may look to the Wicke affidavit and exhibits for evidence of the amount of damages Wicke suffered, as a result of the unlawful wage practices alleged in the complaint. For the purpose of determining mootness the total amount of unpaid wages demanded by Wicke should be calculated as follows:

First, Wicke's affidavit stated that during the damages period, he was required to attend 16 hours of unpaid training, as well as 15 classes for which he had to study 2 hours and 2 classes for which he had to study 4 hours, for a total of 54 hours of required studying and training time. (Wicke Dec. ¶18, 21-22) Because the training/class time was in addition to work hours and travel time during the respective weeks, Wicke estimates that each hour of training/class time should be paid at overtime rates. (Wicke Dec.¶19, 22) Since Wicke on average earned $20 per hour, the overtime premium should be ½ of the $20, or $10 per overtime hour worked. *Kuhnert v. Advanced Laser Machining Inc.*, 2011 WI App 23 ¶14-15; 331 Wis. 2d 625 (Ct. App. 2011) (Employee working overtime hour entitled to regular wage for work performed, plus ½ of average hourly rate earned for the week as the overtime premium). Wicke is therefore entitled to 54 * $16 + 54 * $10, or $1,404. (First Amended Complaint, Count I and III)

Second, during the relevant time period Wicke had 50 work trips away from home that required driving or riding more than two hours, as well as five additional trips that were shorter than two hours each way, but required an overnight stay away from home. (Wicke Dec.¶10-12) Since Wicke was not paid for the first two hours each way on all 47 trips in which he was driving, as well as the Grand Forks, North Dakota trip in which he was riding; and was not paid

for three hours of riding time each way while riding to La Crosse, Wisconsin and Ames, Iowa, and the overnight trips that were shorter than two hours required one hour and 45 minutes of drive time each way, Wicke was not paid for a total of 48 trips * 4 hours + 2 trips * 6 hours + 5 trips * 2 * 1.75 hours, or 221.5 hours of travel time.  Wicke further estimates that 110 of the hours would have been worked during overtime hours.  (Wicke Dec.¶14).  Since Wicke's average hourly rate was $20 (Wicke Dec.¶8), his average overtime premium equaled $10 per hour.  Since L & C pays for drive time at the minimum rate of $7.25 per hour (Wicke Dec.¶17), Wicke is entitled to additional drive pay in the amount of $7.25 * 221.5 + 110 * $10, or $2,715.88.  (First Amended Complaint, Count IV)

Third, Wicke's affidavit establishes that during the relevant damages period, he had 78 trips (excluding trips that are already included in the travel pay calculation in the above paragraph) where he was required to drive from the last jobsite for the day to the company warehouse, and to perform work at the warehouse.  (Wicke Dec.¶15)  On average Wicke would spend one hour driving, and 15-20 minutes performing cleanup activities, for a total of (assuming 15 minutes of cleanup work) 78 hours of driving, and 19.5 hours of cleanup work.  Wicke's cleanup work should be paid at the shop rate. (Wicke Dec.¶8)  Since during a majority of weeks of the damages period Wicke received a shop rate of $16 per hour, which is in the middle of the $13.5 per hour shop rate he received earlier and the $18 per hour shop rate he received later, this damage calculation should assume that Wicke's average shop rate was $16. (Wicke Dec.Ex. 1) Wicke was not paid for any of the 97.5 hours, half of which or 48.75 hours were worked during overtime hours. (Wicke Dec.¶15) Wicke is entitled to additional compensation equal to $7.25 * 78 + $16* 19.5 + 48.75 * $10, or $1,365. (First Amended Complaint, ¶23)

23

Fourth, during the damages period Wicke worked for L & C between at a minimum September of 2010 and February 5 of 2012. (Wicke Dec.¶2, Ex. 1) Two times per month Wicke was required to report to the shop in the morning, before driving to his first jobsite (with an average driving time of one hour), for a total of 34 times during the damages period.  (Wicke Dec.¶16)  80% of the time when Wicke was required to report to the shop in the morning, he would be required to spend an average of 20 minutes working in the shop. (Id.) Wicke therefore was under-paid by 34 hours of driving time and 9 hours of time working in the shop, ½ of which should have been paid at overtime rates.  (Id.)  Wicke is therefore owed $7.25 *34 + $16 * 9 + $10 * 21.5, or $605.50. (First Amended Complaint, ¶22)

Fifth, Wicke's check for the week between December 27, 2010 and January 2, 2011 showed that Wicke worked 44.5 hours, had a rate of $16 per hour, but did not receive any overtime pay.  (Wicke Dec.Ex. 1)  Wicke was entitled to ½ of his hourly rate per each hour of overtime worked as an overtime premium, and is therefore owed 4.5 * $16 * 0.5, or $36 in unpaid overtime pay.  (First Amended Complaint, ¶52)  Similarly, Wicke's check for the week of February 21 – 27, 2011 showed that he worked 40.5 hours at the shop rate, and 1.5 hours at the drive rate, but did not receive any overtime pay.  Wicke is entitled to ½ of his average hourly rate, which was $15.69 for two hours, or $15.69; for a total of $51.69.

Sixth, L & C would instruct Wicke to under-report his overtime hours, and would pay out the un-reported overtime hours as personal time, at the rate of one hour of personal time pay per hour of unreported overtime worked.  (First Amended Complaint, ¶44-47; 73-74)  Under both federal and state law, private employers such as L & C could not offer compensatory time off in lieu of overtime pay.   See 29 U.S.C. §207(o); DWD §274.03, §274.08.   An employer's

24

obligation to pay wages to its employees cannot be offset by other consideration it provided to its employees in lieu of the unpaid wages. *Spoerle v. Kraft Foods Global*, 614 F. 3d 427 (7th Cir. 2010) (Employees entitled to additionally hourly pay for their donning and doffing time, even though under the CBA they received consideration, in return for their agreement that the donning and doffing time would be unpaid). Wicke's 2011 payroll records show that he had a total of 158.5 hours of personal time in 2011. (Wicke Dec.Ex. 1) Since Wicke was supposed to have only 112 hours of personal time in 2011, the additional 46.5 hours of personal time are overtime hours worked, which Wicke was directed by L & C to move to other weeks to avoid time and one half overtime payment. (Wicke Dec.¶7) Using the average hourly rate of $20 per hour (Wicke Dec.¶8), Wicke is entitled to additional compensation under Wisconsin law equal to 46.5 hours * $20 * 1.5, or $1,395.

Seventh, Wicke's paychecks show that he was credited by L & C as having worked 20 hours of overtime driving during 2011, for which he was paid $10.88 per hour.  (Wicke Dec.¶17) For the 20 hours Wicke in fact was entitled to $7.25 per hour, plus an overtime premium of $10 per hour, for a total of $17.25 per hour.  Wicke is therefore owed 20 hours * ($17.25 - $10.88), or $79.40.  (First Amended Complaint, ¶59)

Eighth, as Wicke explained in his affidavit, each time he worked on a prevailing wage project, the project is identified by name in his paycheck. Wicke's paychecks, which are incomplete, showed that between September 4, 2010 and the end of his employment at L & C, he worked at least 587 hours on projects that are identified by name, i.e. prevailing wage projects. (Wicke Dec.¶3, Ex. 1)  Given that paychecks for many weeks are missing, it is reasonable to estimate that Wicke spent at least 600 hours working on prevailing wage projects.  As alleged in

25

the complaint, L & C was required to pay a pre-determined total package of compensation, including wages and benefits to Wicke for each hour he worked on prevailing wage projects, so that disallowing a benefit contribution from counting toward the total package of compensation would increase the hourly wage that Wicke was entitled to receive.  (First Amended Complaint, ¶66)   L & C could not claim deductions for personal days, holiday, and apprenticeship deductions since those deductions were not made to a third party administrator; and L & C never made a written commitment to provide the benefits. (First Amended Complaint, ¶67, 68).  Wicke estimates that on average, the total for personal day, holiday, and apprenticeship contributions for prevailing wage projects would equal $2.51. (Wicke Dec. ¶4) Wicke therefore was entitled to receive an additional $2.51 per hour worked on prevailing wage projects, for a total of $1,506.

Wicke's Wisconsin law claims therefore entitle him to a recovery of $9,122.47.  Under Wis. Stat. §109.11(2), full relief includes 50% increased damages, for a total of $13,684.71.  To the extent that some of the $9.122.47 is also owed under the FLSA, Wicke is entitled to 100% liquidated damages, rather than the 50% liquidated damages permitted by Wisconsin law.  29 U.S.C. §216(b).  Since L & C clearly failed to make an offer of judgment to Wicke that equaled to the full amount of his claims, the offer cannot moot Wicke's ability to either stay in the case as a plaintiff, or to serve as a class representative.[2]   *Greisz v. Household Bank, N.A.*, 176 F. 3d 1012, 1015 (7th Cir. 1995) (Obviously rejection of less than full relief does not prove there is no dispute remaining between the parties).

---

[2] Since Wicke's letter rejecting the offer of judgment made clear that the offer was not for the full amount of the claim, L & C was on clear notice that its motion to dismiss had to address the issue of whether the offer of judgment it made was for an adequate amount.  (Wicke Dec. Ex. 4) The Court should therefore disregard any arguments that L & C may make in its reply brief to dispute Wicke's damage calculations in the mootness analysis. *Sommerfield v. City of Chicago*, 2012 U.S. Dist. Lexis 124283 *3-4 (N.D. IL. 2012) (Striking position raised for first time on reply brief because the gambit is contrary to premise of adversarial legal system, and has no place in the judicial system).

2.      Even if the Offer Was for the Full Amount of Damages, the Plaintiffs Claim is
        Not Moot Because He Filed a Motion for Class Certification.

In *Damasco*, 662 F. 3d at 897, the Court distinguished Rule 68 Offers of Judgment from

other settlement offers, and held that a full, non-Rule 68 offer of settlement immediately moots

the plaintiff's claim.  With respect to Rule 68 offers, the Court took note of district court cases

holding that the case is not moot, if a motion for class certification is made within the 14 days

during which the Rule 68 offer is pending, and declined to overrule the district courts' approach.

Therefore, Damasco did not overrule earlier case law holding that a Rule 68 offer of judgment

for the full amount of damages owed does not moot a claim, when the plaintiff filed a motion for

class certification within the 14 days available for considering the offer.  *Geisman v. Allscripts*

*Health Solutions*, 764 F. Supp. 2d 957, 963-964 (N.D. IL. 2011); *Wilder Chiproctic v. Pizza*

*Hut of Wisconsin*, 754 F. Supp. 2d 1009, 1018-1019 (W.D. WI. 2010).

Similarly, since Wicke filed a motion for class certification on November 13, 2012, while

the 14 days for accepting L & C's offer of judgment had not expired, the claims of the unnamed

members of the class are now before the Court. Geisman, 764 F. Supp. 2d at 964.  L & C's offer

of judgment to Wicke, therefore, cannot moot the claims of the entire class against L & C.  The

Court should therefore reject L & C's challenge on subject matter jurisdictional grounds.

E.      THE COURT SHOULD NOT DECLINE TO EXERCISE SUBJECT MATTER
        JURISDICTION OVER THE PLAINTIFFS' STATE LAW CLAIMS.

Assuming the plaintiff's federal and state law claims form part of the same case or

controversy under Article III of the United States Constitution within the meaning of §1367(a),

28 U.S.C. §1367(c) lists four grounds that, if met, would permit the Court to decline from

exercising supplemental jurisdiction over the plaintiff's state law claims.  L & C concedes that

the plaintiffs' claims meet the requirements of §1367(a), but nonetheless claims that two of the grounds listed by §1367(c) are met, in that the state law claims raise a novel or complex issue of state law, and state law claims predominate over claims over which the district court has original jurisdiction. L & C is wrong in arguing that any of the requirements of §1367(c) are met in the case at bar. Even if one or more of the requirements of §1367(c) are met, as will be argued below interests of judicial economy and fairness strongly compel the Court to retain jurisdiction over the plaintiffs' state law claims.

1.      The Plaintiffs' Claims Do Not Raise Novel or Complex State Law Issues.

With respect to whether the plaintiffs' claims raise novel or complex issues of state law, the plaintiffs' claims are based upon Wis. Stat. §109.03, as well as Chapters 272 and 274 of the Wisconsin Administrative Code, which were promulgated by the Wisconsin DWD to interpret and implement §109.03. A case does not implicate novel issues of state law when it involves a statute that has been interpreted by both several state court decisions, and extensive administrative regulations. *Doe v. City of Chicago*, 883 F. Supp. 1126, 1142 (N.D. IL. 1994). *See also Dobrzeniecki v. Salisbury*, 2012 U.S. Dist. Lexis 59536 *28-29 (N.D. IL. 2012) (Refuse to decline jurisdiction just because the Court will need to interpret state administrative regulations in deciding case); *Martinez v. Regency Janitorial Services*, 2012 U.S. Dist. Lexis 71635 *4-5 (E.D. WI. 2012) (State law claim is not novel if it involves routine statutory and regulation interpretation, rather than complex policy considerations). Similarly, the plaintiffs' claims do not implicate novel or complex questions of state law when §109.03 has been interpreted by a number of federal and state court decisions, and has been interpreted by extensive administrative regulations. See DWD Ch. 272, 274, 290.

28

Seventh Circuit courts have interpreted DWD regulations related to unpaid wages, even though the regulations had never been interpreted by Wisconsin courts. *See for example Spoerle*, 614 F. 3d 427 (Holding that a failure to pay for donning and doffing time violated DWD §272.12(e)). The mere fact that the plaintiff's claims implicate administrative regulations that have not been interpreted by Wisconsin courts, therefore, does not demonstrate that the claims implicate novel or complex state law issues. No novel or complex state law issues are implicated, when the plaintiffs' claims instead involve clear and easily-understandable statutes and regulations. For example, the plaintiffs' prevailing wage claims implicate easily understandable statutes and regulations holding that the employer must pay the full amount of the prevailing wage determination in cash and/or bona fide benefits for each hour worked on prevailing wage projects, see Wis. Stat. §66.0903(4), §103.49(2m); DWD §290.04; that overtime pay on prevailing wage projects must be paid if the employees work more than 10 hours per day or 40 hours per week, Wis. Stat. §103.49(1)(c), DWD §290.01(15), §290.05; and that fringe benefits are bona fide only when they are either paid to a third party, or provided pursuant to a enforceable written commitment. DWD §290.01(10). The Court therefore can resolve the plaintiffs' state law claims by relying upon unambiguous statutes and regulations, and without resolving novel or complex state law issues.

2.     <u>State Law Claims Do not Predominate Over Federal Law Claims</u>.

L & C is no more successful in its argument that state law claims predominate, just because more plaintiffs are involved in the state law claim. In *Ervin v. OS Rest. Services*, 632 F. 3d 971, 980 (7th Cir. 2011), the court rejected the argument that state law claims predominated, just because more plaintiffs participated in the state law claim. The court noted that §1367(a)

29

explicitly authorized supplemental state law claims to add additional parties, and more importantly held that predominance goes to the type of claim, rather than the number of parties involved.  As *Ervin* further held:

> As long as the claims are similar between the state plaintiffs and the federal action, it makes no real difference whether the numbers vary.

632 F. 3d at 980.   The Seventh Circuit explicitly declined to declare whether there ever could be a case, where despite the similarity of claims the disparity in numbers between the federal claim and state claim plaintiffs can affect the supplemental jurisdiction analysis.   The court did, however, indicate that it was unlikely that the disparity in number of plaintiffs could affect supplemental jurisdiction; by noting:

> In the majority of cases, it would undermine the efficiency rationale of supplemental jurisdiction if two separate forums were required to adjudicate precisely the same issues because there was a different number of plaintiffs participating in each forum.

Id. at 980-981.  Similarly, in *Martinez*, 2012 U.S. Dist. Lexis 71635 * 4-5, the Eastern District of Wisconsin read *Ervin* to mean that (1) a simple disparity in numbers should not lead the court to the conclusion that state law claims predominate over the FLSA action and (2) the Seventh Circuit had expressly reserved the question of whether a disparity in numbers could ever be large enough, so that the state law claims would be considered predominant.  The Court then held that state law claims did not predominate even though the state law claims involved 902 members, while the federal law claim had only 9 plaintiffs; and the federal law claim was likely to only ever have 9 plaintiffs given that conditional certification of the FLSA claim had already been denied; and any attempt to revise the FLSA class claim faced an uphill battle.

L & C has not made any argument to the court that the types of federal and state law claims brought by the plaintiffs show that the state law claims predominate. Rather, L & C solely relies upon the numbers of plaintiffs in the federal and state law claims, and cites solely to the misinterpretation of *Ervin* by the district court judge in *De La Riva et al. v. Houlihan Smith & Co., Inc.*, 848 F. Supp. 2d 887 (N.D. IL. 2012). In that case, the Court misread *Ervin* to authorize a finding of state law predominance based solely on the number of plaintiffs in the federal and state case, even though *Ervin* expressly reserved, and did not rule on that issue. *See Martinez, supra*. The court in *De La Riva* further misread the case of *Mims v. Stewart Title Guaranty Co*., 590 F. 3d 298, 308 (5th Cir. 2009). In that case, the court stated that it believed there was a strong argument that state law claims predominated, but did not explain why it believed the state law claims predominated. The opinion included no description of what the state claims were, or how similar the state law claims were to the federal law claims. Because the judge incorrectly assumed that *Ervin* and *Mims* had already decided the issue, the opinion in *De La Riva* contains no analysis for why predominance can be established based on the number of plaintiffs alone; and therefore cannot be persuasive authority in the Western District of Wisconsin.

Despite a disparity of 122:1 in the number of plaintiffs involved in the state law and federal law claims (a far greater disparity than the 40:1 or 50:1 disparity in the case at bar, see First Amended Complaint, ¶6), *De La Riva* did not depend on a difference in numbers alone to decline supplemental jurisdiction. Rather, it relied on a qualitative difference between the claims, i.e. the fact that retaining jurisdiction would result in extensive post-trial proceedings on

the state law claims alone.  In contrast, in the case at bar resolving the plaintiffs' state law claims would largely be determined using same available types of documents as the FLSA claims:

- Travel pay can be calculated by examining employee paychecks and time cards to determine when the plaintiffs were paid travel pay by L & C (thus acknowledging the employees had traveled more than 2 hours each way); and by examining records of hotel registrations, receipts, and reimbursement requests to determine when plaintiffs had overnight stays away from home;

- Pay for un-reported overtime hours can be determined by comparing the plaintiffs' actual hours of personal time for a year, and the hours of personal time he was supposed to be allocated, to calculate the number of un-reported overtime hours; and by using the average wage rate the employee earned during the year;

- Overtime pay for acknowledged overtime hours, and for failing to use the average hourly wage for the week to calculate the overtime premium can be calculated using simple arithmetic, using information already present on employee paychecks.

In contrast to *De La Silva*, in the present case liability for the federal and state law claims would depend on proof of identical or similar facts, while damages would be calculated using similar documents, and without the need for extensive post-trial proceedings.  Since there is no qualitative difference between the federal and state law claims, the state law claims do not predominate.

3.      The Court Should not Decline to Exercise Supplemental Jurisdiction, Even if One or More of the Criteria in §1367(c) is satisfied.

A federal court is not required to decline the exercise of supplemental jurisdiction, even if one of the criteria in §1367(c) is satisfied.  *Hanson v. Bd. Of Trustees*, 551 F. 3d 599, 608 (7th Cir. 2008).  Therefore, even if L & C can demonstrate that the state law claims raise novel or complex state law issues, or that the state law claims are predominant, the Court should determine whether to exercise its discretion to remand the state law claims based upon considerations of judicial economy, convenience, and fairness to the litigants.  *Hanson, supra*.

32

Factors of judicial economy and convenience focus upon avoiding the duplication of effort in federal and state court.  *Hanson*, 551 F. 3d at 608 (One consideration is whether declining supplemental jurisdiction would duplicate effort, time, and expense of litigation); *Roger Whitmore's Auto Servs. v. Lake County*, 2002 U.S. Dist Lexis 24148 *13-14 (N.D. IL. 2002)(Keeping claims together in federal court appropriate when the state law claims are alternative legal theories for liability based upon the same facts).  Similarly, in the case at bar the federal and state claims are based upon the identical facts that L & C failed to treat as compensable hours worked time employees spent to attend mandatory unpaid training and mandatory studying, and when traveling far enough from home to make either driving more than two hours away from home, or an overnight stay necessary; caused its employees to under-report, resulting in under-payment for the employees' overtime hours worked; and by failing to pay the correct amount of overtime pay to employees for their acknowledged overtime hours worked.  Remanding the state law claims, or indeed solely the potential class action state law claims would require the parallel trial of factual and legal issues; and a duplication of effort, time, and expense that should be avoided.

Moreover, the factor of fairness counsels against declining supplemental jurisdiction and dismissing the state law claims, if the dismissal would extinguish the state law claims on statute of limitations grounds.  *Wright v. Associated Ins. Cos*., 29 F. 3d 1244, 1251 (7th Cir. 1994).  Similarly, as filed the plaintiffs' state law claims would apply to all unpaid wages earned on or after September 4, 2010.  See Wis. Stat. §893.44.  A dismissal would extinguish the plaintiffs' state law claims for the time period between September 4, 2010, and a date two years prior to the re-filing of the claims in state court; and would thereby harm and prejudice the plaintiffs.

33

The Court should therefore retain jurisdiction over the plaintiffs' state law claims.

**CONCLUSION.**

For the above stated reasons, L & C's motion to dismiss should be denied in its entirety.

Respectfully submitted this 12th day of December, 2012.

<div style="margin-left:40%">

s/Yingtao Ho
MARIANNE GOLDSTEIN ROBBINS
Wisconsin State Bar No. 1015168
YINGTAO HO
Wisconsin State Bar No. 1045418
The Previant Law Firm, s.c.
1555 N. RiverCenter Drive, #202
P.O. Box 12993
Milwaukee, WI   53212
Phone 414/271-4500
Fax 414/271-6308
mgr@previant.com
yh@previant.com
Attorneys for PLAINTIFFS

</div>