IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WISCONSIN

| | | |
|---|---|---|
| **JEREMY WICKE, et al.** | : | Case No. 3:12-cv-638-wmc |
| | : | |
| Plaintiffs, | : | **DEFENDANT L & C INSULATION'S** |
| | : | **MEMORANDUM IN SUPPORT OF** |
| v. | : | **CONSOLIDATED MOTION TO** |
| | : | **COMPEL DISCOVERY DIRECTED** |
| **L & C INSULATION, INC.** | : | **AGAINST PLAINTIFF AND MOTION** |
| | : | **TO COMPEL PRODUCTION OF** |
| Defendant. | : | **SUBPOENAED DOCUMENTS** |
| | : | **DIRECTED AGAINST LOCALS 19, 34,** |
| | : | **49 AND 127 OF THE HEAT AND** |
| | : | **FROST INSULATORS UNION** |
| | : | |
| | : | **AND FOR AN EXPEDITED HEARING** |

## I.   BACKGROUND

On February 22, 2013, through counsel, L & C served its Second Request of Production of Documents upon Wicke (Ex. A). Wicke provided unsigned responses and objections to this Request on March 29, 2013 (Exs. B and C). Wicke first provided signed responses and objections on April 23, 2013 (Ex. D).

On March 12, L & C issued and sent document subpoenas to the Unions, which were properly served by United States mail (Exs. E, F, G and H). The Unions responded with objections and documents, through their counsel, who is also Wicke's counsel, on March 26 and March 27 (Exs. I and J).

Counsel have embarked to resolve disputes concerning the discovery requested of Wicke and the documents subpoenaed from the Unions. As reflected in Exhibit K, counsel have been successful in narrowing the areas of dispute. Nonetheless, counsel have reached impasse on two

unresolved issues, as more fully detailed below. Accordingly, L & C is filing this Motion to Compel production of the documents in dispute.[1]

## II. ARGUMENT

### A. The Unions Should Be Required To Produce Wicke's Daily Information Reports Relating To His Employment With L & C.

The subpoenas to the Unions seek: "2. Copies of all records relating to Jeremy Wicke" and "4. Copies of all records constituting or referring to communications (including electronic communications) sent to or received from Jeremy Wicke or his legal counsel (The Previant Law Firm) relating to their claims or potential claims against L & C Insulation." (Exs. E, F, G, H). In response to the subpoena, the Unions produced Daily Information Reports prepared by Wicke while he was employed by L & C. These Daily Information Reports constitute Wicke's summary of each of those days. Unfortunately, the Unions, through counsel, redacted the vast majority of the information contained in those Daily Information Reports (Ex. L). At the time, the only basis stated for the redactions was that they were "to exclude information that is irrelevant to the lawsuit." (Ex. J).

From the outset, the Daily Information Reports clearly are within the scope of the subpoenas because they are both records relating to Wicke and are communications sent by Wicke to the Unions relating to claims or potential claims against L & C. Wicke testified in his deposition that he prepared these documents while he was employed by L & C, and forwarded them to the Union (Ex. M, pgs. 249-250). Even Wicke could not tell what kind of information had been redacted or if it relates to this case (Ex. M, pgs. 249-250). Indeed, the material that has not been redacted clearly shows that the records themselves fall within the subpoenas.

---

[1] The undersigned's father-in-law passed away on April 1, contributing to the delay in efforts to resolve these issues prior to filing this Motion.

2

The redactions on these documents are substantial. This is problematic for multiple reasons. First, there is no way for L & C to determine what has been redacted and whether or not it may be of value in this litigation.

Second, the redactions make it difficult if not impossible to read the unredacted portions of the documents in context. The redacted materials include portions of sentences, names of potential witnesses, and in some cases virtually the entire document.

Third, the Unions are not even claiming that all of the redacted information enjoys any kind of privilege or other kind of special protection. Rather, they simply redacted anything that they did not think is relevant to the case (Ex. J).[2]

As amended, Rule 45(d) makes abundantly clear that a "person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business." There simply is no basis for a non-party to selectively redact information from subpoenaed responsive and relevant documents at their whim based upon nothing but a relevancy objection.

Importantly, there is no dispute that the Daily Information Reports contain relevant and discoverable information, including information concerning hours worked and discussions and observations concerning the factual assertions giving rise to the claims. L & C subpoenaed the entirety of the documents containing this information, and not just a portion of such documents. The Unions should be compelled to produce these documents in un-redacted form.

> **B.   The Unions And Wicke Should Be Required To Produce Documents Reflecting Agreements Or Understandings Relating To The Payment Or Reimbursement Of Fees Or Expenses Incurred In This Litigation.**

Request no. 4 of L & C's Second Request for Production of Documents to Wicke seeks:

> Produce all documents and ESI constituting, relating to or referring to any agreement or understanding which Plaintiff or Plaintiff's

---

[2] In an effort to bolster their arguments, the Union subsequently asserted, without any foundation, that employee names were redacted to protect employees against retaliation. (Ex. K).

> counsel has with any individual or entity relating to this litigation, including but not limited to any retainer agreement, fee agreement and any other agreement or understanding relating to the advancement, reimbursement or payment of fees and expenses in this litigation.

Request no. 5 of L & C's Second Request for Production of Documents to Wicke seeks:

> Produce the retainer agreement prepared by Yingtao Ho on July 30, 2012 as referred to in the statement of attorney's fees attached [to the Request for Production].

The subpoenas to the Unions similarly seek:

> "5. Copies or all records constituting or reflecting agreements or understandings with Jeremy Wicke or his legal counsel (The Previant Law Firm) relating to the payment or reimbursement of fees or expenses incurred in the pursuit of their claims or potential claims against L & C Insulation."

Wicke testified at his deposition that he has not paid anything toward the fees and expenses incurred in this litigation, nor is he committed to do so (Ex. M, pgs. 19-20). He further testified that such fees and expenses are being borne by the Unions (Ex. M, pg. 274). Wicke testified that he has not participated in any strategy decisions about the lawsuit (Ex. M, pg. 20). Wicke became employed by the Unions as a business representative shortly after the filing of this case (Ex. M, pgs. 17-19).

In an effort to resolve discovery issues, counsel for Wicke and the Unions provided a summary of the fee and expense arrangement. (Ex. N). Unfortunately, that summary raises more questions than it answers. The Unions are bearing the cost of the litigation with nothing to gain on the face of that summary. Plaintiffs' counsel is performing services at a deeply discounted hourly rate. Wicke has no financial responsibility for pursuit of the case, except for a penal provision that he bears attorney's fees if he settles without the consent of his counsel (and the Unions' counsel). This calls into question other provisions of the agreements, including the

motives and goals of the litigation, and the control of decisions concerning the litigation. All of these issues impact the question of the adequacy of the proposed class representative.

It is well-established that information on fees and other agreements relating to the funding of class action litigation are routinely discoverable at the class certification phase. Joseph M. McLaughlin, *McLaughlin on Class Actions: Law and Practice*, Section 3:7 (8th Ed. 2011). For these reasons, the Unions and Wicke should be ordered to produce such agreements.

L&C seeks expedited treatment of this Motion so that it may have the benefit of the requested documents in preparing its brief in opposition to class certification, due May 21, 2013.

For the reasons stated herein, L&C's Motion to Compel should be granted in its entirety.

Respectfully submitted,

s/Stephen A. Watring
Stephen A. Watring (Ohio Bar No. 0007761)
DUNLEVEY, MAHAN & FURRY
110 North Main Street, Suite 1000
Dayton, Ohio 45402
Ph: (937) 223-6003
Fax: (937) 223-8550
Email: saw@dmfdayton.com
Attorney for Defendant

**CERTIFICATION OF COUNSEL**

Pursuant to Rule 37(a) and Rule 45, I certify that, as counsel for Defendant, I have in good faith conferred with counsel for Plaintiff and the Unions in an effort to procure the requested documents without Court intervention. Documentation of such efforts is contained in Ex. K to this Memorandum.

s/Stephen A. Watring
Stephen A. Watring (Ohio Bar No. 0007761)

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was hereby filed electronically this 25th day of April, 2013. Notice of this filing will be sent by operation of the Court's electronic filing system to counsel of record for all parties as indicated on the electronic filing receipt. Parties and their counsel may access this filing through the Court's system.

I further certify that a copy of the foregoing was served upon counsel for the Unions, Marianne Robbins and Yingtao Ho, 1555 N. RiverCenter Drive, #202, P.O. Box 12993, Milwaukee, WI 53212, by email and ordinary mail this 25th day of April, 2013.

s/Stephen A. Watring
Stephen A. Watring (Ohio Bar No. 0007761)