# IN THE UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF WISCONSIN

| | | |
|---|---|---|
| **JEREMY WICKE, et al.** | : | Case No. 3:12-cv-638-wmc |
| | : | |
| Plaintiffs, | : | |
| | : | |
| **v.** | : | |
| | : | **DEFENDANT'S BRIEF IN** |
| **L & C INSULATION, INC.** | : | **OPPOSITION TO PLAINTIFFS'** |
| | : | **MOTION FOR SUMMARY** |
| Defendant. | : | **JUDGMENT** |

## I.    PROCEDURAL POSTURE

The procedural posture of this case is particularly important in evaluating Plaintiffs' Motion.  While not clear from Plaintiffs' Brief, only limited issues remain before the Court.  The Court has dismissed all of Plaintiffs' class action claims, and overruled Plaintiffs' belated Motion to add FLSA collective action claims.  Plaintiffs Simmons and Knudson have accepted L & C's offer of judgment on their federal claims, and this Court has entered judgment on those claims. Therefore, the only federal claims that remain before this Court at this time are Plaintiff Wicke's FLSA claims.

Despite this, Plaintiffs' Brief on its face seeks summary judgment on the FLSA claims of Plaintiffs Simmons and Knudson even though those claims have already been reduced to a Rule 64 judgment.  For this reason, Plaintiffs' FLSA arguments only apply to Plaintiff Wicke.

Furthermore, Plaintiff Wicke's FLSA claims, as well as all of Plaintiffs' state law claims, are presently the subject of a Motion to Dismiss.  Because that Motion challenges the subject matter jurisdiction of this Court, it should be resolved prior to consideration of Plaintiffs'

Motion.  Plaintiffs' Motion should be overruled for the simple reason that the Court does not have and should not exercise subject matter jurisdiction over Plaintiffs' claims.

For the reasons stated in this Brief, Plaintiffs' Motion for Summary Judgment should be denied in its entirety.

## II.   ARGUMENT

### A.   As The Party That Bears The Ultimate Burden Of Proof At Trial, Plaintiffs Bear A "Significantly Different Burden" On Summary Judgment.[1]

Plaintiffs' discussion of the summary judgment standard fails to take into account a critical distinction where, as here, Plaintiffs as the moving parties also bear the burden of proof at trial:

> "The party who has the burden of proof at trial has a significantly different burden on summary judgment than the party who does not. The party who has the burden of proof at trial must show that the evidence supporting his claim is so compelling that no reasonable jury could return a verdict for his opponent."

*Ribble v. Kimberly-Clark Corporation*, No. 09-C-643, 2012 U.S. Dist. LEXIS 55610 at *18 (E.D. Wisc. Feb. 21, 2012).

Thus, contrary to Plaintiffs' argument, it is not enough for them to just show an absence of a material fact.  *Id.*  Instead, "to obtain summary judgment" they "must demonstrate that [their] evidence leaves no room for an adverse finding on each requirement" of their claim.  *Id.* at *19.   Also see *Maynor v. Dow Chemical Co.*, 671 F. Supp. 2d 902 (S.D. TX. 2009), relied upon by Plaintiffs on page 13 of their Brief.

Because Plaintiffs employed the incorrect summary judgment standard, it is little wonder that they have fallen short of meeting this heightened burden.  Furthermore, even under the lower summary judgment standard erroneously advanced by Plaintiffs, their burden is to show that

---

[1] For the Court's convenience, unless otherwise noted, L & C has lettered the subsections of its Brief to correspond to the organization of Plaintiffs' Brief.

there is no genuine issue of material fact and that they are entitled to judgment as a matter of law. (Plaintiffs' Brief at 3). As the *Ribble* court stated, since Plaintiffs are the movant, this means that they must show that their evidence is so compelling that it leaves "no room for an adverse finding on each requirement" of their claim. *Id.* at *19.

For the most part, Plaintiffs do not even try to prove that they are entitled to judgment. Indeed, they make little effort to show that there is no genuine issue of fact. Their Brief reads more like a trial brief on isolated requirements of their claims, rather than a motion for summary judgment addressing "each requirement" and showing that they are "entitled to judgment". They do not show that they are entitled to "judgment" as that term is defined under the Rules. See F.R.Civ.P. Rule 54(a). Moreover, when a defendant moves for summary judgment on liability, it potentially disposes of all issues and results in final judgment. By definition, a plaintiff's motion directed at liability only cannot result in judgment. Whether Plaintiffs' Motion is granted or overruled, all that this will do is resolve certain legal issues for trial. It will not establish liability or damages. Plaintiffs' Motion does not meet the requirements of Rule 56, especially for a moving party, and should be denied for that reason alone.

    **B.**    <u>L & C Was Not Required To Pay Employees For The Unpaid Training Offered By L & C.</u>

        1.    <u>Under Established Law, L & C Was Not Required To Pay Plaintiffs For Training For Reasons Independent Of Those Argued By Plaintiffs.</u>

Plaintiffs first argue that L & C was obligated to pay them for four specific types of training: crew leadership, fire stop, OSHA safety, and first aide/CPR (Plaintiffs' Brief at 4). For purposes of this argument, Plaintiffs contend that the same standard applies as to both Plaintiffs' claims under Wisconsin law and Wicke's claim under federal law (Plaintiffs' Brief at 4-8). L & C agrees. See *Viveros v. VPP Group, LLC*, No. 12-cv-129-bbc (W.D. Wis. February 12,

2013)(Wisconsin law normally to be interpreted to be consistent with FLSA).  Therefore, on this issue there is no need for this Court to conduct a separate analysis of state law.[2]

Plaintiffs do not address the primary issue in their argument, and instead, stake their claim on 29 C.F.R § 785.27, which indicates that training time need not be compensated if 4 requirements are met.   It is important to note that the regulation is phrased in the negative.   It does not say that training time must be compensated if these requirements are not met.  In other words, it provides one reason that training time need not be compensated.  The training at issue here is non-compensable for a totally different reason.

It is well established that employers need not compensate applicants for training that the employer requires before the applicant commences work.  *Walling v. Portland Terminal Co.*, 330 U.S 148 (1947); *Walling v. Nashville, Chattanooga & St. Louis Ry.*, 330 U.S. 158 (1947).  This is because the Portal to Portal Act provides that such activities need be compensated only if they are an integral and indispensable part of the principal activities.  29 U.S.C. §284 *et seq.*  See also DWD§ 272.12(1)(a)2 (workday defined by principal activities). This principle has been extended to apply to training after hire.  *Ballou v. General Elec. Co.*, 433 F.2d 109 (1st Cir. 1970); *Bienkowski v. Northeastern University*, 285 F.3d 138 (1st Cir. 2002).    In the words of the First Circuit in *Bienkowski v. Northeastern University*, 285 F.3d 138, 141 (1st Cir. 2002):

> "Under settled Supreme Court precedent, employers who furnished training to potential employees were not required under the FLSA to compensate trainees for time spent in the training program. * * * Because these cases required individuals to be compensated only for their activity as workers, * * * the employer's decision to hire its employees before the completion of training did not obligate it to compensate them for the time spent in their status as students after their hiring."

---

[2] Plaintiffs do make a minor distinction between federal law and state law to the extent that they claim that both indicate that the hours at issue must be counted for overtime, while only Wisconsin law provides that the hours must also be paid (Plaintiffs' Brief at 8-9).

Noting that it would be inconsistent to apply a different standard to an employer that "tolerantly allows" training to be completed while the employee is working, the *Bienkowski* court made short work of the regulation cited by Plaintiff:

> "[W]e doubt that the regulation was meant to cover the peculiar situation presented here * * *. And in the event the regulation was intended to apply to such situations, it would be inconsistent with * * * the statute and precedent."

*Id.* at 141.

Following *Ballou* and *Bienkowski*, the Sixth Circuit applied the same principle to employee attendance at OSHA training classes-the same type of classes as are at issue here. *Chao v. Tradesmen International, Inc.*, 310 F.3d 904 (6th Cir. 2002).   Thus, the court in Tradesmen stated:

> "[T]he plaintiffs here are performing no work while attending the OSHA classes and the subject matter is not directly related to their job skills.   Therefore, * * * defendant employer should not be made liable for overtime pay for time its employees spend as students, rather than as workers.   * * * We do not see why the employer should be penalized for allowing a potential employee to begin earning income while striving to meet certain prerequisites for the job."

*Id.* at 910.

Importantly, in applying this principle, the First Circuit in *Bienkowski* specifically found no reason to distinguish between training of officially enrolled apprentices and training of other employees. As explained in *Bienkowski* and conceded by Plaintiffs (Plaintiffs' Brief at 10-11), it is well established that enrolled apprentices need not be compensated for the type of training at issue in this case.

The record leaves no doubt that this analysis applies to L & C's training.  Plaintiffs had no experience as insulators, and accepted jobs with L & C with the understanding that they

would receive training, including classroom training, so that they could learn a skilled trade and become highly compensated journeymen insulators (Defendant's PFOF ¶1, 4).  L & C's training of Plaintiffs fulfilled their apprenticeship requirements (Defendant's PFOF ¶7).  L & C provided Plaintiffs the agreed-upon training (Defendant's PFOF ¶1, 24).  As a result, Wicke and Simmons later started employment through the union at a higher level (Defendant's PFOF ¶2, 24).  Wicke later touted his training with L & C in seeking employment as an insulator. (Defendant's PFOF ¶5).  Therefore, their training was not compensable under established law.

Accordingly, Plaintiffs have failed to establish that there is no room for an adverse finding on their claim, that they have proven each and every element of their claim, and that they are entitled to judgment as a matter of law.  Plaintiffs' Motion should be denied.

2.      <u>L & C Is Not Required To Compensate Plaintiffs For OSHA Mandated Training</u>.

As construction employees, OSHA regulations provide for Plaintiffs to undergo certain types of training, including the OSHA safety classes, first aide training and fire protection training.  See 29 C.F.R. Part 1926; OSHA Publication 2254.  Indeed, in the words of Simmons, he had to undergo the OSHA training to even walk onto the jobsite (Defendant's PFOF ¶17).  The training at issue here also need not be compensated for this reason as well.  See 29 C.F.R. 553.226(b); *Carter v. Mayor & City Council of Baltimore City*, 2010 U.S. Dist. LEXIS 18477 (D. Md. 2010).   Plaintiffs have totally failed to address this critical issue.  As a result, at a bare minimum, Plaintiffs have not presented this Court with the necessary facts and arguments to determine whether or not this training falls within this category.  Once again, Plaintiffs have failed to establish that there is no room for an adverse finding on their claim, that they have proven each and every element of their claim, and that they are entitled to judgment as a matter of law.  Plaintiffs' Motion should be denied.

>    3.    Plaintiffs Have Not Even Shown That The Training At Issue Does Not Meet The Requirements Of 29 C.F.R Section 785.27.

Unlike the prior two arguments, Plaintiffs do at least argue that the training involved here does not meet all of the elements of 29 C.F.R § 785.27.  Of course, as indicated above, even if Plaintiffs were correct, the training time is not compensable for totally independent reasons not addressed by Plaintiffs.  Furthermore, Plaintiffs are even wrong in their analysis of 29 C.F.R. § 785.27.

While this regulation sets forth four criteria, Plaintiffs implicitly concede that two of the criteria are met and focus on the other two criteria.  Thus, Plaintiffs only argue that the training was mandatory, and that it was directly related to their existing jobs (Plaintiffs' Brief at 5).  They are incorrect on both points.

>    a.    *The training was not mandated by L & C.*

Plaintiffs are incorrect when they argue that the training was mandated by L & C.  Each of them attended some but not all of the training (Defendant's Response to Plaintiffs' PFOF 46).  The best example of this is Wicke.  He acknowledges that he chose not to attend this unpaid training with other employees, but suffered no tangible adverse consequences as a result (Defendant's PFOF ¶26).  Simply stated, actions speak louder than words.  In reality, there was nothing mandatory about the training.

Plaintiffs' strained attempt to characterize this training as a mandatory special meeting smacks of desperation.  With the exception of leadership training, unpaid training is training by third party providers.  Attendance at this training is not limited to L & C employees (Defendant's PFOF ¶27).  It is hard to comprehend how this could be understood to be a special employee meeting.  While perhaps L & C never told employees that unpaid training was not a required special meeting, neither is there any evidence that L & C ever told employees that the unpaid

training was a required special meeting. (Defendant's PFOF ¶40). Furthermore, while training is mentioned by name elsewhere in the handbook, it is not mentioned under the section on special meetings. (Defendant's PFOF ¶41). By its language, that section is confined to "required company or department meetings." Third party training to a class comprised of some L & C employees and some non-L & C employees is neither. Plaintiffs cannot point to a single incident where L & C has used the phrases "training" and "special meetings" interchangeably.

Next, Plaintiffs argue that the third party training was mandatory because employees were required to reimburse L & C if they did not attend. Again, this is not true. The evidence relied upon by Plaintiff is confined to OSHA 30 training, which is an OSHA 30 hour training course occurring toward the end of apprenticeship training (Defendant's PFOF ¶9). None of Plaintiffs stayed at L & C long enough to attend the OSHA 30 course, so this never became applicable to them. (Defendant's PFOF ¶9). They do not even claim to have been aware of this requirement while they were employed (Plaintiffs PFOF, ¶56, 57).

Apparently recognizing that their arguments rest on a shaky foundation, Plaintiffs try to shore them up by seizing on the contention that attendance at training (not attendance at special meetings) is a factor in annual evaluations and eligibility for future pay increases (Plaintiffs' Brief at 6-7). The record is clear that attendance at training itself was not a requirement for a wage increase (Defendant's PFOF ¶29). Moreover, even if it was, the eligibility for future pay increases, however, is just that. It is eligibility for a future increase. It is not, as Plaintiffs' argue, a present condition of employment. See *Price v. Tampa Elec. Co.*, 806 F.2d 1551, 1552 (11th Cir. 1987) (loss of raise opportunity does not render training involuntary). Also see 29 C.F.R. § 785.28 (referencing present working conditions rather than future working conditions). As a bare minimum, Plaintiffs have not shown that this training was mandatory as a matter of

law, and that Defendant has no chance of prevailing on this issue. Accordingly, their required for summary judgment is without merit.

> b.      The training was not directly related to the Plaintiffs' jobs.

Next, Plaintiffs argue that the third party training is "directly related" to the employee's job (Plaintiffs' Brief at 7-8). Plaintiffs' argument misconceives the meaning of this phrase under the regulations. The regulations and court decisions make clear that this means training that simply is designed to make the employee more efficient at the job. If the training is to provide the employee new knowledge, to teach new skills, or to prepare the employee for advancement or promotion, it is not "directly related" for purposes of this test. *Dade County v. Alvarez, 124 F.3d 1380* (11th Cir. 1997), cert. denied, 523 U.S. 1122 (1998). Here the training is not designed to simply make the employee more efficient at his job. Rather, it is designed to promote safety and provide the employee leadership skills as a part of their overall training to become a journeyman (Defendant's Response to Plaintiff's PFOF ¶66, 68; Defendant's PFOF ¶16). The training at issue expressly was for the purpose of preparing Plaintiffs' for advancement to journeymen insulators. Plaintiffs have not shown that they are entitled to judgment as a matter of law on this issue.

> 4.      Plaintiffs' Motion Regarding Unpaid Training Should Be Denied.

As demonstrated above, Plaintiffs have not shown that they are entitled to judgment as a matter of law concerning unpaid training. That training is non-compensable for a host of reasons. Accordingly, Plaintiffs' Motion on this issue should be denied.

> **C.      Plaintiffs Are Not Entitled To Additional Compensation For Paid Training Time.**

> 1.      Because Plaintiffs' Argument For Additional Recovery Is Outside The Scope Of The Second Amended Complaint, It Is Not Part Of This Case.

It is important to understand what Plaintiffs are arguing in this section of their brief, and then compare that argument with the allegations in their Second Amended Complaint.  Unlike their previous argument about unpaid training, this argument is about training that was paid but not considered for overtime purposes.  It is undisputed that the training at issue in this section of Plaintiffs' Brief was paid.  Here lies Plaintiffs' problem.  Counts I and II of their Second Amended Complaint relate exclusively to unpaid training.  The remaining Counts relate to totally different issues.

Counts I and II both are very specific that they are for unpaid hours, not for hours that were paid.  (Second Amended Complaint, ¶11, 15).  The hour is late for Plaintiff to be permitted a de facto further amendment of their complaint.  See Doc. #136, Opinion and Order, filed 10-9-13.  Plaintiffs were provided time and pay records which provide any foundation for this new claim almost a year ago (Doc. #79, Ho Dec., 4-29-13, ¶2).  After receipt of those records, Plaintiffs again amended their Complaint without adding this new allegation concerning paid training time.  Plaintiffs should be denied summary judgment on this new un-pled allegation for this reason alone.

2.   <u>Plaintiffs' Claims Relating To Paid Training Time Suffer The Same Defects As Their Claims For Unpaid Training Time.</u>[3]

Many of the facts and the law discussed above relating to Plaintiffs' claims for unpaid training time are equally applicable to Plaintiffs' claims relating to paid training time.  Here, however, the analysis starts with a bedrock principle of wage-hour laws.  It is elementary that overtime is calculated based upon compensable time, i.e. hours worked rather than hours paid.  Similar to holiday and other forms of non-compensable time, Plaintiffs are not entitled to overtime compensation for paid training time unless L & C was legally required to compensate

---

[3] Because Nestle training is analytically distinct, it is separately addressed in subsection C.3. below.

for that time. *Reich v. Lucas Enterprises, Inc.*, 2 F.3d 1151 (6th Cir. 1993); *O'Hara v. Menino*, 253 F.Supp.2d 147 (D. Mass. 2003). Plaintiffs overtime claims relating to these hours rises and falls over the issue of whether L & C was legally required to compensate employees for the training in the first place. Therefore, the analysis concerning the paid and unpaid training hours is exactly the same.

For purposes of this argument, Plaintiffs contend that the same standard applies as to both Plaintiffs' claims under Wisconsin law and Wicke's claim under federal law (Plaintiffs' Brief at 4-8). L & C agrees. Therefore, on this issue there is no need for this Court to conduct a separate analysis of state law.

Plaintiffs again stake their claim on 29 C.F.R § 785.27. Independent of this regulation, under *Tradesmen, Ballou and Bienkowski*, "the employer's decision to hire its employees before the completion of training did not obligate it to compensate them for the time spent in their status as students after hiring." *Id.* This same analysis applies even though Plaintiffs were not registered apprentices. *Id.* As with the unpaid training, L & C hired employees without experience with the understanding that they would be trained to learn how to become skilled journeyman insulators.

Accordingly, Plaintiffs have failed to establish that there is no room for an adverse finding on their claim, that they have proven each and every element of their claim, and that they are entitled to judgment as a matter of law. Plaintiffs' Motion should be denied.

Likewise, similar to unpaid training time, Plaintiffs have not even shown that the paid training involved here does not meet all of the elements of 29 C.F.R § 785.27. As in the analysis of unpaid training time, even if Plaintiffs were correct, the training time is not compensable for totally independent reasons not addressed by Plaintiffs. Furthermore, Plaintiffs are even wrong

in their analysis of 29 C.F.R. § 785.27.   Attendance at paid training class was never mandated. (Defendant's PFOF ¶29).   While it was expected that employees attend training, if they did not they were given the opportunity to do a take-home test instead of attending (Defendant's PFOF ¶14, 30).   Plaintiffs can point to no other consequence of non-attendance  (Defendant's PFOF ¶25, 26).   As a result, an employee that did not attend class but passed the test would still be eligible for a wage increase.   Similar to unpaid training, paid training could not have been a special meeting under L & C's policy because it was not a company meeting or a department meeting. (Defendant's PFOF ¶41).

The  same  arguments  also  apply  to  Plaintiffs'  claim  that  the  paid  training  is  "directly related" to the employee's job (Plaintiffs' Brief at 7-8).   The training was to enable employees to learn the trade, advance to journeyman status and receive pay raises.   This is not compensable under applicable law.  *Dade County v. Alvarez*, 124 F.3d 1380 (11th Cir. 1997), cert. denied, 523 U.S. 1122 (1998).   Plaintiffs' Motion should be denied.[4]

> 3.    Plaintiffs Have Not Proven That They Are Entitled To Judgment As To All Issues Concerning The Nestle Training.

While Plaintiffs also made no allegations concerning the Nestle training in their Second Amended Complaint, Plaintiffs are not entitled to judgment as to Nestle training for yet another reason.   They have not established that they attended that training, that any attendance triggered overtime, or that they were not properly compensated for that attendance.   Plaintiffs' evidence in this regard is limited to another employee (Plaintiffs' PFOF at 29, 30, 31).   While their Proposed Findings of Fact seek to extend the tentacles of this evidence to them, the evidence cited simply

---

[4] Plaintiffs overstate the extent to which they were required to perform productive work during paid training (Defendants' Response to Plaintiffs' PFOF ¶42).   While this time was *de minimus* in nature, the fact is that the time was still paid.   Furthermore, Plaintiffs have not shown that this time was spent in weeks where they had already worked 40 hours.   Finally, there is no basis for contending that working that time would somehow transform non-compensable training time performed that same day into compensable time.

does not back them up (Defendants' Response to Plaintiffs' PFOF at 29, 30, 31, 46). Defendant readily concedes that Nestle training is compensable time, and if it was not paid it was simply a mistake. This, however, does not relieve Plaintiff of their burden to allege and prove that they were affected by this mistake. Because Plaintiffs have not done so, their Motion should be denied.

> ### D.   L & C Was Not Obligated To Pay For Plaintiffs' Alleged "Study Time."

> > #### 1.   Plaintiffs' Alleged Study Time Is Non-Compensable For The Same Reasons As Their Training Time.

It is abundantly clear from Plaintiffs' Brief that even they concede that their alleged study time, including alleged take-home tests, was part and parcel of their training. As conceded by Plaintiffs, "[s]tudying for the tests taught the students the knowledge that they needed to become journeymen insulators" (Plaintiffs Brief at 18). Therefore, under *Bienkowski, Ballou and Tradesmen*, that time is not compensable.[5]

This is even more true with respect to this claim. Plaintiffs chose if and when to undertake study time (Defendant's PFOF ¶42, 43). Likewise, take home tests could be completed if and when Plaintiffs decided to do so (Defendant's PFOF ¶30). Failing to complete a take home test did not affect existing conditions of employment, and only affected eligibility for future pay increases (Defendant's PFOF ¶15). Plaintiffs' arguments regarding this time fails for the same reason as their preceding arguments. Plaintiffs are not entitled to summary judgment on this issue.

> > #### 2.   Plaintiffs Are Not Entitled To Summary Judgment Based Upon Their Own Authority.

If the training time at issue here were otherwise compensable under *Ballou* and its progeny, Defendants agree with Plaintiffs that *Mory v. City of Chula Vista*, 2010 U.S. Dist. Lexis

---

[5] Once again, Plaintiffs do not contend that Wisconsin law is different than the FLSA on their study time claims.

100777 (S.D. CA. 2010), represents a correct interpretation of the law concerning off-duty time. Based upon *Mory*, Plaintiffs' alleged "study time" is not compensable.[6]

*Mory* involved claims by a police academy trainee concerning alleged "Homework". *Id* at *21. It is important to recognize that unlike here, in *Mory*, the court was considering the appropriateness of granting summary judgment to the defendant on the plaintiff's homework claims. The *Mory* court's disposition of defendant's motion for summary judgment on those claims was as follows:

(a)   Uniform maintenance done at night to make uniform presentable as required the next day-summary judgment denied viewing evidence most favorably to plaintiff.

(b)   Firearm maintenance at night when weapon must be kept clean and rules prohibited cleaning on campus-summary judgment denied viewing evidence most favorably to plaintiff.

(c)   Physical fitness training-summary judgment denied. Dispositive question of fact on whether time was compensable is whether physical fitness training was required as plaintiff contended, or simply encouraged as defendant contended.

(d)   Shooting practice-summary judgment granted to defendant. While plaintiff was expected to be prepared for test, additional shooting practice was not required, and plaintiff could have instead used the time for personal pursuits.

(e)   Defensive tactics practice-summary judgment granted to defendant. While plaintiff was encouraged to practice and felt the need to practice in order to pass the course, practice was not mandatory and plaintiff could have used the time for her personal pursuits.

---

[6] The court in *Mory* did not address the *Ballou* line of cases in its analysis. Based upon the court's summary of the arguments of the parties, it appears that this argument was not before the *Mory* court.

> (f)     Study time-summary judgment granted to defendant.  While it was understood that plaintiff would be self-studying and it was prudent for her to do so, it was not required and plaintiff could have instead used the time for her personal pursuits.

*Id.* at *21-32.

Plaintiffs' alleged "study time" in the present case is not compensable under this same analysis.   Initially, Plaintiffs claim that they were "required to complete take-home tests" (Plaintiffs' Brief at 13-14).     As in *Mory*, take home tests were not mandatory.  Plaintiffs could chose when to take them and whether to take them (Defendant's PFOF ¶30).  The only consequence of not taking them was loss of eligibility for a future pay increase (Defendant's PFOF ¶15).  Interestingly, the consequences for the Plaintiff in *Mory* were far more severe.  If she failed, she would not graduate from the police academy and would not become a police officer.  The *Mory* court's discussion of shooting time is particularly enlightening here.  The *Mory* court found that the shooting time was not compensable because plaintiff admitted that it was for her own personal gain.  Likewise, Plaintiffs' incentive to complete take home tests was the prospect of a possible future wage increase (Plaintiffs' PFOF ¶75).  Under *Mory*, these tests are not compensable.  Indeed, Plaintiffs' absolute best case is that there may be an issue of fact for trial.  Either way, Plaintiff is not entitled to summary judgment on the take home test issue.

Plaintiffs' next argument relating to self-study time is even more tenuous (Plaintiffs' Brief at 14-18).  The facts and rationale in *Mory* concerning study time are extremely analogous to the study time claims at issue here.  While it may have been prudent for Plaintiffs to engage in self-study if they wanted to advance in their trade and receive wage increases, it was in no way required (Defendant's PFOF ¶42, 43).  Plaintiffs could have instead used that time for their own personal pursuits, just like Wicke did when he chose not to go to OSHA training (Defendant's

PFOF ¶25, 26).   They voluntarily chose how to spend their time (Defendant's PFOF ¶43).

Therefore, under Plaintiffs' own authority, the time is not compensable.   Plaintiffs' Motion

should be denied.

> **E.     Under The FLSA, L & C Was Not Obligated To Pay For Wicke's Commuting Time Between Home And Work.**

While Plaintiffs carefully avoid the phrase, their claims concerning travel time relate

exclusively to time spent commuting from home to work.   Plaintiffs have already conceded that

L & C compensated employees for travel time from one jobsite to the other during the course of

the workday  (Defendant's PFOF ¶49).

It is no mystery why Plaintiffs avoid calling the time at issue what it is-commuting time.

That is because under clear federal law, commuting time is presumptively non-compensable.

*Espenscheid v. DirectSat USA, LLC*, 2011 U.S. Dist. LEXIS 154706 (W.D. Wis. 2011); *Rutti v.*

*Lojack Corp.*, 596 F.3d 1046 (9th Cir. 2010).   Here, Plaintiffs face a triple hurdle.   First, they

must show that there is no genuine issue of fact and that they are entitled to judgment as a matter

of law.   Second, because they bear the burden of proof, they must prove at this stage that no

reasonable jury could rule against them.   Third, they must overcome a presumption that the time

at issue is not compensable.   Because Plaintiffs do not even acknowledge the existence of these

hurdles, their argument stumbles at the starting blocks.

The lynchpin of Plaintiffs' argument is the travel time regulation found at 29 C.F.R.

Section 785.39.   Plaintiffs' first problem is that this regulation cannot supersede the statutory

framework making travel time presumptively non-compensable.   Thus, Plaintiffs do not even try

to overcome that presumption.   Simply stated, the regulation Plaintiffs rely upon is inconsistent

with the statutory scheme as interpreted by the courts.

Moreover, even Plaintiffs' interpretation of Section 785.39 is wrong.  That regulation only says that travel time is compensable "when it cuts across the employee's workday."  This, of course, begs the question:  When does travel time "cut across" the employee's workday?  Once again, Plaintiffs gloss over and do not even try to answer this threshold question.  Until recently, there has been a paucity of judicial authority interpreting this regulation.  Fortunately, that was changed last year by *Bassett v. Tennessee Valley Authority*, No. 5:09-CV-00039, 2013 U.S. Dist. LEXIS 83203 (W.D. Ky. June 13, 2013).  In *Bassett*, after undertaking a detailed analysis of the competing interpretations of the regulation, the court summarized:

> "To recap, 29 C.F.R. §785.39 states that travel time is compensable when it cuts across: 1) an employee's workday and 2) an employee's regular working hours on nonworkdays. Travel time is *not* compensable when: 1) it occurs outside of the employee's regular working hours, whether on working or nonworking days, or 2) the employee is a passenger on a common carrier and his travel occurs during his regular working hours on nonworking days."

*Id.* at *22-23 (emphasis original).

The *Bassett* court, however, did not stop there.  In addressing the cases cited by Plaintiffs here, (Plaintiffs' Brief at 19), it explained that two of them are consistent with this interpretation, and likewise drew the distinction between compensable out of town travel during normal working hours, and non-compensable out of town travel outside of normal working hours.  *Id.* (citing and quoting  *Dekker v. Constr. Specialties of Zeeland, Inc.* 2012 U.S. Dist. LEXIS 29336 (W.D. Mich. Mar. 6, 2012); *Mendez v. Radec Corp.*, 232 F.R.D. 78 (W.D.N.Y. 2005)).

The *Bassett* court then turned its attention to Plaintiffs' only other case, (Brief of Plaintiff at19), *Treadway v. BGS Construction, Inc.*, 2007 U.S. Dist. LEXIS 71149 (S.D.W.Va. Sept. 25, 2007).  The *Bassett* court explained that the analysis set forth is *Treadway* "is simply too incomplete to be informative" because it does not identify whether the travel in that case

occurred during working or nonworking days or the hours during which the travel occurs. *Id.* at 24.

Plaintiffs' analysis suffers from the same deficiencies as the analysis in *Treadway*. Indeed, Plaintiffs seek to paint with an even broader brush. They argue that when Wicke "traveled to other locations where [he] received company paid motel stays," all such commuting time should be treated as hours worked regardless of when the travel occurred (Plaintiffs' Brief at 19). Simply put, Plaintiffs' analysis is inconsistent with the statutory presumption that commuting time is not compensable, the regulatory language and court authority.

Additionally, as further explained by the court in *Bassett*, Plaintiffs' analysis is inconsistent with an overwhelming number of secondary sources addressing the travel time issue. *Id.* at *25.

L & C respectfully submits that the following conclusion from *Bassett* sets a useful guidepost for the Court in this case:

> "If a Plaintiff is found to be entitled to recover for travel time in this case, he can recover only for travel that occurred during regular working hours on working days or during corresponding hours on nonworking days. If travel occurred partly inside and partly outside those hours, a Plaintiff can recover only for the travel time that occurred inside those hours."

*Id.* at *28.

Of course, Wicke did not have a regular work location that he reported to and because his working hours fluctuated based upon the job that he was assigned to. Wicke accepted the position with L & C understanding that it would involve lots of travel (Defendant's PFOF ¶54). He always understood the travel from home to the jobsite in excess of two hours would not be paid (Defendant's PFOF ¶55). Wicke characterized himself as a kind of migrant who moved around from job to job. He went to whatever project he was assigned to on a daily basis

(Defendant's PFOF ¶59).  His working hours varied widely (Plaintiff's PFOF ¶16; Defendant's PFOF ¶60, 61).  Nonetheless, his normal working hours can easily be defined as starting when he started work on the first jobsite for the day and ending when he stopped working on the last jobsite for the day.  (Defendant's PFOF ¶61)

This means that Wicke's commuting time was not a normal part of his working hours.[7] Even if Plaintiffs disagree with this, their absolute best case is that it creates a question of fact for the jury.   Especially considering that he is both the moving party and the party bearing the ultimate burden of proof, Wicke therefore cannot prevail on summary judgment on this issue. Plaintiffs' Motion should be denied.

**F.**      **Under Wisconsin Law, L & C Was Not Obligated to Pay For Plaintiffs' Commuting Time Between Home And Work.**

Plaintiffs next contend that they are entitled to home to work commuting time under Wisconsin law. Specifically, Plaintiffs challenge L & C's practice of not paying employees for the first two hours of commuting time (Plaintiffs' Brief at 21)  With absolutely no authority, and little rhyme or reason, to back them up, Plaintiffs urge the Court to arbitrarily legislate a new Wisconsin law to say that commuting time must be paid for trips over 90 miles, which Plaintiffs again seek to arbitrarily equate to an hour and a half of travel time.  Even more perplexing, even though they challenge L & C's two hour rule, the basis for Plaintiffs' 90 mile hypothesis is yet another L & C rule, (Plaintiffs' Brief at 23), or more precisely its general "rule of thumb." (Defendant's Response to Plaintiffs' PFOF ¶13).

---

[7] Wicke argues that L & C made commuting time compensable by virtue of its practice of paying commuting time after the first two hours.  While this is inconsistent with the controlling case authority cited by L & C, at the absolute most it would mean that the commuting time over two hours, i.e. the time that L & C already pays pursuant to its practice, is compensable.  Plaintiff's argument to the contrary would force L & C to adopt a new custom of paying all travel time.

The basis for Plaintiffs' attack on L & C's two hour rule is fundamentally flawed. Plaintiffs myopically focus on one sentence in the regulations to support their position. True, DWD Section 272.12 (2)(g)6 does provide that "[t]ravel away from the home community for business purposes that occurs for the benefit of the employer is considered hours worked." This, however, cannot be read in a vacuum or out of context.

DWD's travel time regulations commence by explaining that whether travel time is working time will "depend upon the <u>kind of travel</u> involved." DWD Section 272.12(2)(g)1. The regulations then commence to address two of the basic different <u>kinds of travel</u>. First, the regulations address one <u>kind of travel</u>-"home to work" travel, i.e. commuting travel. DWD Section 272.12(2)(g)2, 3 and 4. They set forth the general rule that home to work travel is not compensable, whether the work is at a fixed location or different jobsites. DWD Section 272.12(2)(g)2. They then set forth two specific and detailed exceptions to this rule concerning this specific kind of travel. DWD Section 272.12(2)(g)3 and 4. Unlike the regulation relied upon by Plaintiffs, both the headings and the text of these three sections make it clear that they are setting forth the rules for home to work travel.

After setting forth the rules on commuting time or home to work travel, the regulations next address another <u>kind of travel</u>:  non-commuting travel during the course of the workday. DWD Section 272.12(2)(g)5. There is a stark contrast here based upon the kind of travel involved. While commuting time normally <u>is not</u> compensable under (g)2, non-commuting travel time normally <u>is</u> compensable under (g)5.

Next comes the regulation relied upon by Plaintiffs, DWD Section 272.12(2)(g)6. Given its placement after the cardinal rule on non-commuting travel time, it is fairly clear that this regulation applies to non-commuting travel during the course of the workday. The question is

whether it is also intended to apply to commuting travel, even though commuting travel has already been specifically addressed by earlier regulations.

First, since the regulations recognize a difference between commuting travel and non-commuting travel, and set forth different rules in the preceding regulations depending on the kind of travel involved, it would be incongruous to assume that this one regulation applies to both and that all of a sudden whether the travel was commuting or non-commuting did not matter. Considering that the regulators made clear that they were addressing home to work travel in (g) 2, 3 and 4, it is a dubious assumption that they also intended to address it in (g)6 but just failed to mention that.

Second, if (g)6 had been intended to apply to commuting time as well as non-commuting time, it would totally render (g)4 unnecessary and superfluous. It is unlikely that the regulators would have taken the time to meticulously separately explain when and why commuting time might be compensable in (g)4 only to subordinate and substantially nullify that section with the less detailed language of (g)6. Moreover, Plaintiffs' argument would create an anomalous situation whereby employers could offset travel time for office workers against their normal commuting time, but could not do the same for migrant construction workers (Plaintiffs' Brief at 22).

Third, Plaintiffs' interpretation of (g)6 conflicts with (g)5, especially in this case. Distinguishing between "all in a days work travel" that is covered by (g)5 and "home to work travel" that is covered by (g) 2, 3 and 4, (g)5 provides:

> If an employee normally finished their work on the premises at 5 p.m. and is sent to another job which they finish at 8 p.m. and is required to return to their employer's premises arriving at 9 p.m. all of the time is working time. However, if the employee goes home instead of returning to their employer's premises, the travel after 8 p.m. is home-to-work travel and is not hours worked.

This is exactly the situation in this case.  If (g)6 would be interpreted to apply to Plaintiffs' commuting time, it would be totally inconsistent with this language from (g)5.  It is unlikely that the drafters intended this inconsistency.

A much more logical conclusion is that (g)2, 3 and 4 address home to work travel and that (g)5 and 6 address non-commuting travel time.  This interpretation would also have the benefit of generally being in harmony with federal law as discussed in the preceding Section. *Viveros v. VPP Group, LLC*, No. 12-cv-129-bbc (W.D. Wis. February 12, 2013)(Wisconsin law normally to be interpreted to be consistent with FLSA).  It would also be in harmony with the DWD definition of  "workday," as meaning "the period between 'the time on any particular workday at which such employee commences their principal activity or activities" and "the time on any particular workday at which they cease such principal activity or activities.'"  DWD Section 272.12(1)(a)(2).  Plaintiffs' interpretation would turn this principle on its head, and require that commuting employees be paid for time before they begin their principal activity and after they cease the principal activity.

L & C's interpretation also would be consistent with industry practice.  By now, it is no secret that this litigation is being sponsored and financed by labor unions competing against L & C for insulation construction work.  The collective bargaining agreements for those same unions provide that commuting travel time is not compensated.  (Doc. #102, Watring Declaration, filed 7-1-13, Exs. A-D; Defendant's PFOF ¶56).  See *Yi v. Sterling Collision Centers, Inc.*, 480 F.3d 505, 510-511 (7th Cir. 2007)(industry wage-hour practice likely to be legal) quoted in *Christopher v. SmithKline Beecham*, 132 S. Ct. 2156, 2168 (2012).

Moreover, in light of all of the foregoing, Plaintiffs' strained interpretation of the regulations creates an issue of whether the regulation as so interpreted is constitutionally void for

vagueness.  See *Karlin v. Foust*, 188 F.3d 446 (7th Cir. 1999).  Certainly there is nothing in the regulation that places L & C on notice that its commuting policy is illegal.  Even more so, there is nothing in the regulations that even suggest, much less mandate, that Plaintiff's arbitrary 90 mile rule should apply.  Of course, where possible, courts should interpret regulations to avoid such constitutional problems.

At the absolute worst, even if (g)6 would be construed to apply to commuting time, this would leave the factual question of whether each job falls inside or outside each Plaintiffs' home community.  Plaintiffs' best case is that this is a question of fact for the jury, or at best a mixed question of fact and law.  In either case, the question is not appropriate for resolution on summary judgment.

Just like with training time, whether paid or unpaid, commuting time is not compensable hours worked.  Therefore, it is not considered for computing overtime. *Espenscheid v. DirectSat USA, LLC*, 2011 U.S. Dist. LEXIS 154706 (W.D. Wis. 2011); *Rutti v. Lojack Corp.*, 596 F.3d 1046 (9th Cir. 2010).

For all of these reasons, Plaintiffs Motion should be denied.

### G.   Under Applicable Law, L & C Properly Computed And Paid Overtime Based Upon The Rate In Effect For The Overtime Hours.

A good starting point for analysis on this point are the cautionary words of the Seventh Circuit in another wage-hour case, *Dinges v. Sacred Heart St. Mary's Hospitals, Inc.*, 164 F.3d 1056 (7th Cir. 1999):

> "Although the FLSA overrides contracts, in close cases it makes sense to let private arrangements endure--for the less flexible statutory approach has the potential to make everyone worse off. Suppose we were to hold that time the [employees] spend on call counts as "work." That would produce a windfall for [Plaintiffs] today, but it would lead the Hospital to modify its practices tomorrow."

*Id.* at 1059.

The Seventh Circuit's prophetic words are equally true here.   Adopting Plaintiffs' argument will have the instant effect of causing L & C and all similarly situated employers to curtail employee overtime.   The potential of a windfall to Plaintiffs will lead to the modification of practices to the disadvantage of current employees.  L & C hastens to add that this is not just a compensation issue.   As the Court previously has been made aware, L & C has limited office staff.  Adopting the approached urged by Plaintiff would require a recalculation of the average rate of pay for every week for every employee who works overtime.  When the law is unclear, *Dinges* dictates that it should be interpreted to avoid such unintended adverse consequences. Similarly, it should be interpreted to avoid constitution void for vagueness issues and unfair surprise to litigants. *Karlin v. Foust*, 188 F.3d 446 (7th Cir. 1999); *Christopher v. SmithKline Beecham*, 132 Sup. Ct. 2156 (2012).

And, Wisconsin law on the issue is unclear.  Plaintiffs do not even contend otherwise. They admit that the issue is not directly addressed by any statute or regulation (Plaintiffs' Brief at 25).  They admit that the only court case that they cite, *Kuhnert v. Advanced Laser Machining, Inc.*, 2011 WI App 23 (Wis.App. 2011), is distinguishable on its face. Nobody was advancing the position now being advance by L & C.  It did not involve an employer's challenge, but an appeal by an employee and not the issues here.   It involved corrective calculations for a salaried employee that had misclassified as exempt.   And most importantly, it did not involve a multiple rate issue at all because the employee did not have different rates for different tasks.   *Kuhnert* did not involve a de novo determination, but rather deferential review of an administrative agency determination.  *Kuhnert's* deference to the agency interpretation must be viewed in this light.

This leaves Plaintiffs with an informal interpretation found on the DWD's website.  Of course, Plaintiffs acknowledge that this interpretation only applies to salaried employees.  Moreover, even this summary does not say that the approach outlined is the only possible approach permitted under Wisconsin law.  It is described as an approach by which calculation of the rate "can be accomplished."  It addresses different forms of compensation that should be included in the computation of the hourly rate, but does not in any way address the methodology to use when different rates are used for different tasks.  Perhaps this explains why Plaintiffs only half-heartedly argue that even this informal interpretation only "suggests" that they are right (Plaintiffs' Brief at 25).  This is as good as their case gets.

In support of their "suggestion" Plaintiffs attempt to analogize their situation to a regulation concerning tipped employees and an informal interpretation concerning salaried employees. This is more harmful than helpful to Plaintiffs.  Obviously, if the DWD had intended to extend their interpretation to hourly construction workers, they would not have been so limited in their regulation and interpretation.   The inference is that they did not intend such a broad interpretation.

This case is similar to *Kuhnert* in one respect.  L & C recently was audited concerning its pay practices on some of the same jobs where Plaintiffs worked.  L & C was deemed in compliance with prevailing wage laws as a result of that audit (Defendant's PFOF ¶71).  While it is true that this was a prevailing wage audit, its significance should not be understated.  If the Plaintiffs were right, L & C would have been required to consider the prevailing wage jobs and rates in calculating overtime, even when the prevailing wage hours were not the overtime hours.  Under Plaintiffs' theory, to do otherwise would be a prevailing wage violation.  Even though L & C used its approach to computing Wicke's overtime rate on at least one of these projects,

(Defendant's PFOF ¶72) no violation was found, and L & C was commended for its understanding of and compliance with the law.     At a bare minimum, this suggests DWD's acquiescence in L & C's practice . *Christopher v. SmithKline Beecham*, 132 Sup. Ct. 2156 (2012).  Plaintiffs' theory is inconsistent with these findings. As in *Christopher*, the DWD's interpretation is only given a measure of deference consistent with its limited power to persuade.

Plaintiffs appear to both embrace and distance themselves from federal law. Concededly Wisconsin law is not always to be interpreted in "lock step" with federal law when the Wisconsin statutory or regulatory scheme dictates otherwise.  But, where, as here, Wisconsin law is unclear, it is appropriate to refer to federal law.  *Viveros v. VPP Group, LLC*, No. 12-cv-129-bbc (W.D. Wis. February 12, 2013).  Plaintiffs implicitly concede in their Brief that L & C's calculation of the overtime rate comports with federal law.  They do not argue otherwise.  As Plaintiffs recognize, federal law expressly endorses L & C's calculation methodology if there is an "agreement or understanding" between the employer and employee to that effect. 29 U.S.C. Section 207(g)(2). L & C has always used its method of calculating overtime (Defendant's PFOF ¶72).  An implicit understanding is enough to satisfy this requirement.  *Townsend v. Mercy Hospital of Pittsburg*, 862 F.2d 1009 (3rd Cir. 1988).  Also see *Mathias v. Addison Fire Protection District No. 1*, 43 F.Supp.2d 916 (N.D. Ill. 1999).  At a minimum, this presents a factual issue for the jury.

For these reasons, Plaintiffs' Motion is without merit, and should be denied.

### H.   Plaintiffs' Cannot Recover For Prevailing Wage Benefits That They Already Received.

Of course, any right which Plaintiffs have to sue under prevailing wage laws necessarily is derived from those laws.  Wisconsin Statute Sections 103.49 and 66.0903 set the parameters

for Plaintiffs' potential claims.  Specifically, in words substantially identical to those used in Section 103.49, Section 66.0903(11)(a)(1) provides:

> "Any contractor, subcontractor, or contractor's or subcontractor's agent who fails to pay the prevailing wage rate determined by the department under sub. (3) or who pays less than 1.5 times the hourly basic rate of pay for all hours worked in excess of the prevailing hours of labor is liable to any affected employee in the amount of his or her unpaid wages or his or her unpaid overtime compensation and in an additional amount as liquidated damages as provided under subd. 2. or 3., whichever is applicable."

In other words, Plaintiffs' right to recovery is limited to their unpaid wages and proportionate liquidated damages.  The prevailing wage statutes do not give the Plaintiffs the right to usurp the authority given to the Department of Workforce Development by suing over alleged technical violations of the law.  Those provisions are for the DWD to enforce as it sees fit.  Under the clear statutory language, Plaintiffs may sue for their unpaid wages and liquidated damages.  That it is.

Plaintiffs never contend that they did not receive the correct paid time off or holiday benefit (Plaintiffs' Brief at 27-29).  Plaintiffs received those benefits (Defendant's PFOF ¶5, 67, 68, 70; Plaintiffs' PFOF ¶100).  With the exception of an alleged minor miscalculation concerning Plaintiff Knudson, Plaintiffs do not contend that L & C did not make health insurance contributions or that they did not receive the correct insurance benefit (Plaintiffs' Brief at 29-30).  Plaintiffs received those benefits (Defendant's PFOF ¶65, 70; Plaintiffs' PFOF ¶101).  Plaintiffs do not contend that L & C did not make apprenticeship plan contributions on their behalf (Plaintiffs' Brief at 30-32).  L & C made those contributions (Defendant's PFOF ¶65, 70; Plaintiffs' PFOF ¶101).  Plaintiffs received the benefit of those apprenticeship contributions in the form of training using the manuals and materials provided by that program (Defendant's PFOF ¶69).  Plaintiffs further enjoyed the benefit of that training in their subsequent union

employment (Defendant's PFOF ¶2, 24).  Wicke has touted that training in seeking subsequent employment (Defendant's PFOF ¶5).

Under the prevailing wage laws that they have sued under, Plaintiffs do not have the right to sue over benefits that they already received simply because they do not like the way that they were administered. Plaintiffs have suffered no tangible loss, and have not been damaged. Moreover, there is absolutely nothing in the statutory language, law, or common sense that would suggest that this Court should award to Plaintiffs damages for benefits that they have already received.

Additionally, Plaintiff's argument that L & C's benefits do not qualify under prevailing wage laws is wrong.  Note (b) under DWD § 290.01(10), in pertinent part provides:

> "No difficulty is anticipated in determining whether a particular economic benefit is bona fide in the ordinary case where benefits are those common in the construction industry and which are established under a usual fund, plan or program. The following are typical conventional economic benefits: medical or hospital care, pensions on retirement or death, compensation for injuries or illness resulting from occupational activity, or insurance to provide any of the foregoing, unemployment benefits, life insurance, disability and sickness insurance, or accident insurance, vacation and holiday pay, defrayal of costs of apprenticeship or other similar programs, or other bona fide economic benefits * * *. Employers may take credit for contributions made under such conventional plans without requesting the approval of the department." (Emphasis added).

In other words, these kinds of benefits presumptively qualify as a "usual fund, plan or program" under §290.01(10)(b) rather than an unfunded plan under §290.01(10)(c). Thereafter, §290.01(10)(b)and the note that follows then describes a means of compliance through one or more of these types of funds, plans or programs:

> "(b) Fund, plan or program. The contribution for an economic benefit must be made pursuant to a bona fide fund, plan, or program.

> Note: The phrase "fund, plan, or program" is intended merely to recognize the various types of arrangements commonly used to provide economic benefits through employer contributions."

Section 290.01(10)(c), which Plaintiffs rely on, is not applicable because the benefits qualify under (b). Thus the requirements of (c) do not apply here. Plaintiffs' legal argument based upon (c) lacks merit.

As noted above, Plaintiffs also claim that L & C made a ten cent an hour error in calculating the health insurance costs for Plaintiff Knudson for the four month time period from January, 2011 through April, 2011. While this claim would be more appropriate for small claims court, L & C will briefly address it. First, the claim is not within the scope of any of the claims raised in Plaintiff's Second Amended Complaint, and should not be permitted to be raised at this late date. Second, because Plaintiff Knudson first became a party to this case on March 27, 2013, 3 of the 4 months complained of are outside of the statute of limitations. Of the period alleged, only the five week period from March 27, 2011 through April 30, 2011 is within the statute of limitations. Third, Knudson only worked during 2 of those 5 weeks. (Trester Dec., 2-20-14. ¶4, Ex. B). During those 2 weeks, he only worked 53.5 hours on prevailing wage projects (Defendant's PFOF ¶79). Thus, Knudson's claim on this issue is for $5.35, and should be disregarded as de minimus. Fourth, Plaintiffs' formula may be right, but their math is wrong. Plaintiffs correctly indicated that the benefit is calculated by multiplying the monthly contribution by 12 and then dividing it by the hours worked by the employee to get the hourly contribution rate (L & C Gauchel Tr. at 32). Plaintiff then makes an unsupported inferential leap that the hours worked by Plaintiffs was always 2080 per year. Even the most cursory review of Knudson's time records reveals that he did not even work close to that many hours. During the 12 month period in question, from his first paycheck in July, 2010 until his anniversary date on

June 30, 2011 Knudson at the most had 1400.5 hours even including non-compensable drive time and training hours.  To be precise, this is the number that would need to be used to compute the hourly cost of his insurance benefit.  Then once the numbers are corrected, the formula is:

$294.12 monthly insurance premium x 12 months = $3,529.44 annual premium
$3,529.44 annual premium divided by 1400.5 hours worked = $2.52 per hour (rounded down)

Therefore, because L & C only took an hourly credit of $1.80 for this benefit, this actually gave Knudson an extra benefit of $.72 per hour.  While Plaintiffs have chosen not to provide the Court with other evidence of alleged benefit underpayment, because Plaintiffs were seasonal construction workers, presumably this example would hold true for the other Plaintiffs and other years as well. Because fringe benefits can be used interchangeably to satisfy prevailing wage requirements, this additional amount can be used in determining L & C's prevailing wage compliance.  Most significantly, the difference between the smaller health insurance credit that L & C claimed and the larger credit that L & C was entitled to is greater than the apprenticeship contribution that Plaintiffs dispute.  Thus, even if that apprenticeship contribution is totally discounted, L & C still made fringe benefit contributions in excess of the amounts it claimed.  As a result, Plaintiffs' prevailing wage argument collapses like a house of cards.

Even if Plaintiffs could overcome all of the above problems with their argument, the plain fact is that Plaintiffs have not even made an effort to show that any of their arguments translate in a prevailing wage underpayment.  In order to do so, Plaintiffs would have to show that the total prevailing wage package provided to them by L & C was less than the prevailing wage determination for the project in question (See Plaintiff's Brief at 27).  In and of itself, Plaintiffs' argument means nothing since they have not connected the dots to show that it resulted in an underpayment of the prevailing wage.

Conversely, the Court does have before it compelling evidence that L & C has fully complied with prevailing wage laws.  In 2011 and 2012, L & C was subjected to a DWD investigation on its prevailing wage practices, including its practices on the projects worked on by Plaintiffs (Defendant's PFOF ¶71).  As a result, L & C was determined to be in compliance with prevailing wage laws with the exception of a $49.88 mistake.  In a letter sent to L & C and copied to Plaintiffs' union benefactors, the investigator closed with the following comments:

> "The department appreciates the quality and organization of the information submitted.  It is apparent from the records reviewed that L & C Insulation understands and is committed to complying with Wisconsin's prevailing wage rate laws."

This alone is sufficient to defeat Plaintiff's arguments.  Their Motion should be denied.

## III.   CONCLUSION

For the reasons stated herein, Plaintiffs' Motion for Summary Judgment is without merit, and should be denied in its entirety.

Respectfully submitted,

s/Stephen A. Watring
Stephen A. Watring (Ohio Bar No. 0007761)
DUNLEVEY, MAHAN & FURRY
110 North Main Street, Suite 1000
Dayton, Ohio 45402
Ph: (937) 223-6003
Fax: (937) 223-8550
Email: saw@dmfdayton.com
Attorney for Defendant

## **CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing was hereby filed electronically this 20th day of February, 2014.  Notice of this filing will be sent by operation of the Court's electronic filing system to counsel of record for all parties as indicated on the electronic filing receipt.  Parties and their counsel may access this filing through the Court's system.

s/Stephen A. Watring
Stephen A. Watring (Ohio Bar No. 0007761)